# EXHIBIT 1

CHRIS DEROSE
Clerk of the Superior Court
By Anna Valenzuela, Deputy
Date 09/28/2018 Time 16:01:57
Description                    Amount
———— CASE# CV2018-012269 ————
CIVIL NEW COMPLAINT            333.00
————————————————————————————
TOTAL AMOUNT                   333.00
        Receipt# 26827602

1 | THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
2 | Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
3 | Phoenix, Arizona 85003
Telephone: (602) 456-1901
4 | Facsimile: (602) 801-2834
benedetto@the-plf.com
5 | hamel@the-plf.com

6 | *Firm email for docketing purposes:*
admin@the-plf.com
7 |

8 | *Attorneys for Plaintiff Brienna Chamberlain*

9 | IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

10 | IN AND FOR THE COUNTY OF MARICOPA

11 |

12 | BRIENNA CHAMBERLAIN, a
married woman,                        Case No.

13 |            Plaintiff,              **COMPLAINT**  *CV*2018-012269

14 | v.

15 | JAMES NUEMANN, a married man;       (JURY TRIAL DEMANDED)
SHOUT OUTDOOR MEDIA, LLC, a
16 | Missouri limited liability company;
and GLASS HALF FULL, LLC, an
17 | Illinois limited liability company;
JOHN AND JANE DOES I-X; ABC
18 | CORPORATIONS I-X; and BLACK
AND WHITE PARTNERSHIPS I-X;
19 |

20 |            Defendants.

21 | For her Complaint against Defendants James Neumann, Shout Outdoor Media,

22 | LLC, and Glass Half Full, LLC, Plaintiff Brienna Chamberlain, hereby alleges as follows:

23 | **INTRODUCTION**

24 | 1.    This case involves the type of disparate power dynamics, sexual abuse of

25 | young women, and institutional complicity in sexual assaults that have gone unexposed

26 | and unchecked for far too long in this country.  It is a reality that has taken center stage at

the United States Senate's Supreme Court confirmation hearings, and one that our society is no longer willing to allow to be swept under the rug.

2.    Jim Neumann is a well-known Chicago businessman who owns and operates trendy restaurants and outdoor media companies throughout the United States, including the Glass Half Full restaurant group (which owns Phoenix-area restaurants Old Town Gringos, Camp Social, and The Hatter and Hare) and Shout Outdoor Media (an outdoor marketing company which lists Wal-Mart, McDonald's, and Pepsi among its clients).

3.    At the time of the events that gave rise to this Complaint, Brienna Chamberlain was an aspiring medical student who was saving money for school and working in a $30,000-a-year administrative position for Neumann's company.

4.    In October 2016, Neumann lured Ms. Chamberlain to Las Vegas under the pretense of a business trip. He took her to a strip club, waited until she blacked out, and suggested to her that she must have been "roofied." Then he carried her back to his hotel room where he sexually assaulted her and took photographs of her while she was unconscious.

5.    Such abuse should belong to bygone eras. Unfortunately, this case, like so many others, is being brought today because powerful men, like Neumann, continue to prey upon, exploit, harass, and assault women with impunity. Indeed, this is not even the first time Neumann has been subjected to a civil suit for exploiting the power dynamics of his workplaces to harass, fondle, grope, abuse, and sexually assault scores of women: In 2008, a St. Louis jury issued a $1.1 million verdict against Neumann for bringing an employee to Las Vegas, bringing her into his room, straddling her and masturbating while she was sleeping. And nearly two years after her assault, Ms. Chamberlain continues to be re-traumatized hearing about Neumann's continuing abusive behavior towards his own employees.

6.     Ms. Chamberlain now brings this action for the same reasons so many women are coming out of the shadows: to shine a light on behavior that is intolerable in our modern society, to seek redress for the substantial emotional and physical harm she endured at the hands of Neumann and his companies, and most importantly, to send a clear and unequivocal message to Neumann that the years-long gender-based hostile work environments and sexual harassment in which he has engaged, and continues to engage, is unacceptable and will not be tolerated in our State.

## PARTIES

7.     Plaintiff Brienna Chamberlain is a married woman residing in Phoenix, Arizona.

8.     Upon information and belief, Defendant James Neumann is a married man who owns a home in Paradise Valley, Arizona, and resides for at least part of the year in Arizona.

9.     Upon information and belief, at the time of the events that gave rise to this Complaint Defendant Shout Outdoor Media, LLC ("SOM") was a Missouri limited liability company that is duly licensed to do business in Maricopa County, Arizona. SOM is responsible for establishing, administering, and applying company-wide policies, which directly affect all employees. During the times relevant to this Complaint, SOM employed Ms. Chamberlain at its location in Maricopa County.

10.     Upon information and belief, at the time of the events that gave rise to this Complaint, Defendant Glass Half Full, LLC ("GHF") was an Illinois limited liability company that is duly licensed to do business in Maricopa County. GHF is responsible for establishing, administering, and applying company-wide policies, which directly affect all employees.

11.     For the purpose of this Complaint, SOM and GHF are each responsible for Neumann's wrongful acts and omissions under the doctrine of *respondeat superior*.

- 3 -

12.     John and Jane Does I-X, ABC Corporations, and Black and White Partner are fictional defendants, so named on information and belief, whose names will be substituted with the names of actual defendants once their names become known.

## JURISDICTION AND VENUE

13.     The Maricopa County Superior Court has jurisdiction over this action pursuant to Article VI, section 14 of the Arizona Constitution and A.R.S. § 12-123.

14.     Venue is proper in this Court insofar as Plaintiff resides in this county, Defendant Neumann owns property in this County, and SOM and GHF both operate businesses that are duly licensed to do business in this County.

15.     This case presents an actual case in controversy arising under Arizona state law.

## GENERAL ALLEGATIONS

### Neumann Builds a Restaurant Empire

16.     Neumann is a successful marketing professional and, more recently, restauranteur. After starting his career in outdoor media, installing billboard signs for 3M, Neumann developed a talent for outdoor marketing. A charismatic and effective salesman, he quickly moved up the corporate chain, becoming the youngest Vice President in 3M's 110-year history. Since then, he has worked for and started numerous media firms, and earned the award "100 Marketers Who Changed American Culture."[1]

17.     Neumann parlayed this early success and praise into his own businesses. In 2004, he founded AdOne Media, Inc., an outdoor marketing company incorporated in Nevada and based in St. Louis, Missouri. After facing civil lawsuits for alleged racketeering and sexual assault, Neumann shuttered AdOne, moved to Chicago, and began to explore developing a presence in Scottsdale, Arizona.

---

[1] *See* https://j-neuman.tumblr.com/post/173664680813/jim-neumann-a-marketer-who-changed-american

-4-

18.     In 2016, Neumann opened Glass Half Full, LLC, a parent company to scores of restaurants and bars all over the country.  Through this company (and others of the same name), Defendant Neumann opened Optima, a two-story rock n'roll bar and lounge based in downtown Chicago; The Rabbit Hole, an "Alice in Wonderland" themed bar in the same, hip neighborhood; and Wild Child, an upscale Chicago eatery with a "Soho, New York type feel."[2]  In the Phoenix metropolitan-area, Neumann opened Old Town Gringos, the Hatter and Hare, and Camp Social—novelty-theme bars that quickly became, along with Neumann himself, hallmarks of the Valley's social scene.

<u>Neumann's History of Sexual Harassment and Abuse</u>

19.     Among those with whom he has worked, Neumann is known for more than his trendy bars and vast fortune.  In fact, many of his employees, especially his female employees, tell a much different story.  These women discuss Neumann in whispers and warnings.  They recount a years-long pattern, where Neumann would use his power to sexually exploit scores of women.  These women have witnessed or experienced the indignities of being harassed, propositioned, forcibly kissed, groped, fondled, or assaulted by Neumann – bearing this abuse in angry silence or through fake smiles, learning that if they played off his advances with humor they could avoid upsetting him and potentially losing their ability to make ends meet.

20.     The most public example of Neumann's misconduct came in 2007, when he was still running AdOne in St. Louis.  Sherry Flotron, one of Neumann's employees filed a lawsuit alleging that Neumann had begun sexually harassing her almost immediately upon her hiring; that he would comment on her "nice ass" or repeatedly inquire about her underwear; and that, on one business trip to Chicago in which Defendant Neumann isolated

---

[2] Hall, Gina, "Chicago Restaurant group moving to Phoenix, citing more 'opportunity,'" Chicago Business Journal, May 16, 2017, available at:
https://www.bizjournals.com/chicago/news/2017/05/16/chicago-restaurant-group-moving-to-phoenix-citing.html

- 5 -

her, forcibly kissed her, and propositioned her for sex (removing his shirt and demanding a back rub when she turned him down).[3] In another incident that eerily echoes Ms. Chamberlain's experience, Ms. Flotron alleged that Neumann lured her to Las Vegas under the pretense of a business trip. Once there, Neumann sexually assaulted Flotron by undressing himself, climbing on top of her, and masturbating and ejaculating onto her while she slept.[4] The jury in that case awarded her $1.1 million.

21. Nearly a decade later, one of Ms. Chamberlain's coworkers recalled similar conduct. She disclosed a time that Neumann encouraged her to bend over in front of him, presumably so that he could ogle her. She recalls Neumann's first remarks to her after she was hired: "Damn! There goes my chances of sleeping with you.... Or does it?" She recalls observing Neumann routinely and non-consensually touching female employees. And she remembers all tell well the time that Neumann followed her into very small supply closet, getting uncomfortably close to her in an enclosed space.

22. These stories are simply examples of a widespread trend. In fact, it appears that virtually all of Neumann's female employees experienced some form of sexual harassment or assault: Neumann would regularly grope and grab employees' butts without permission, would attempt to kiss them, would coerce or request that they stroke his penis when he offered them rides home, and would routinely send sexually explicit text messages to female employees over group message threads.

<u>Brienna Chamberlain Begins Working for Neumann</u>

23. In 2014, Brienna Chamberlain was looking for work. A 2010 graduate of Arizona State University, Ms. Chamberlain wanted to pursue a career in medicine, serving

---

[3] Hamilton, Keegan; *Stripped Bare: Sometimes Even Chesterfield CEOS like Jim Neumann, Must Stand Naked*; RiverFront Times, March 19, 2008, available at:
https://www.riverfronttimes.com/stlouis/stripped-bare-sometimes-even-chesterfield-ceos-like-jim-neumann-must-stand-naked/Content?oid=2454135.
[4] *Id.*

marginalized populations abroad, particularly in Africa. To lay a foundation for her career, she spent much of the first five years of her career working in Non-Governmental Organizations. She volunteered at a home that housed orphaned children in Kenya. She worked for a Phoenix-based support center for homeless teens, and she spent time working as a teacher in South Africa.

24.    To supplement her volunteer work, Ms. Chamberlain worked part-time as a bartender, as she had during her college years.

25.    In 2014, Ms. Chamberlain received a call from an old colleague, Dave Corba, with a job opportunity. He wanted her to help him open a bar – "Old Town Gringos" in Old Town Scottsdale – that had recently been purchased by a new company called Glass Half Full, LLC ("GHF").

26.    At the time, Ms. Chamberlain was unaware that GHF was owned by Neumann, had never met him, and was wholly naïve about his history of sexual predatory behavior.

27.    Ms. Chamberlain worked hard as a bartender at "Old Town Gringos," and it didn't take long for her exceptional work ethic and obvious intelligence to stand out. Within weeks of starting, Ms. Chamberlain was singled out for attention by Neumann.

28.    Neumann expressed to Ms. Chamberlain that her education and skill-set would be better utilized in a management position than behind the bar, and he moved her into a position as the sales/public relations manager for GHF.

29.    Part of Ms. Chamberlain's job responsibilities at GHF included marketing and promotions, which required her to work with SOM, Neumann's other company.

30.    Before long, Ms. Chamberlain was managing and assisting SOM employees, and was actively working for both GHF and SOM, while earning an annual salary of approximately $30,000. This dual employment was not unusual. GHF and SOM were both

owned by Neumann, worked closely together, and had numerous employees who did work for both businesses, irrespective of which business ultimately signed their paycheck.

31. In the summer of 2017, Neumann transferred Ms. Chamberlain to SOM full-time, to work as its real estate developer.

32. As a managerial employee for SOM, Ms. Chamberlain was required to sign an "Employment Agreement" confirming that although her employer was formally Shout Outdoor Media, it was a holding company for Shout Outdoor Marketing, Glass Half Full, LLC, and Airespot/Passport, a technology company.

<u>Neumann's Sexual Harassment of Ms. Chamberlain begins</u>

33. During Ms. Chamberlain's employment at GHF and SOM, she observed Neumann's regular acts of sexual harassment of other female employees. She observed him talking openly, and inappropriately, of his sexual encounters; groping and even kissing female employees, many of whom did not want such attention; and bragging about cheating on his wife so often that he developed his own clever slogan for it ("My wife is married, but I'm not.").

34. Neumann did not spare Ms. Chamberlain from such abuse. At work, he would regularly grab and grope her buttocks and make inappropriate comments about her attractiveness, her body, or his sexual preferences. Uncomfortable with his actions but feeling powerless to do anything about it without risking her job, Ms. Chamberlain learned to mimic the way her female co-workers would respond to him: slapping his hand off of her body while smiling, chuckling, and rolling her eyes at him to deflect from the conduct.

35. One night, a visibly intoxicated Neumann attempted to kiss Ms. Chamberlain while they were at the bar after work. When Ms. Chamberlain rebuffed his untoward advances, Neumann became enraged and stormed out of the bar.

36. Ms. Chamberlain, like many of her female co-workers, continued to worry about upsetting Neumann by denying his advances. Despite Neumann's abuse, Ms.

1   Chamberlain took pride in her career and was pleased with how quickly she had advanced.
2   She was regularly working with clients and contractors twice her age, managing large
3   advertising portfolios, and was quickly learning a business she knew nothing about. She
4   felt like maintaining this important piece of her identity – her career – depended on keeping
5   her boss happy. So, like her other female coworkers, Ms. Chamberlain simply found ways
6   to deal with her boss's behavior, repugnant as it often was, without putting her job at risk.

7                                  The Las Vegas Trip—Day One

8       37.    In September 2016, Neumann told Ms. Chamberlain that he would be taking
9   a business trip to Las Vegas to conduct due diligence on a property that a client wished to
10  explore for placement of a new billboard.

11      38.    Skeptical that Neumann simply wanted her to come to Las Vegas to party
12  with him and his friends, and not interested in such an invitation, Ms. Chamberlain
13  specifically confirmed with him that this trip was for business purposes. Neumann
14  confirmed the existence of the potential property and shared more details with Ms.
15  Chamberlain.

16      39.    Satisfied that this was a work trip with a real business objective – to inspect
17  and assess a property for a client's desired billboard – Ms. Chamberlain agreed to go to Las
18  Vegas. Neumann then booked her flight.

19      40.    As initially planned and communicated to Ms. Chamberlain, the business trip
20  was supposed to be for two days: She would arrive Saturday morning and leave Sunday
21  afternoon.

22      41.    On Saturday morning, October 1, 2016, Ms. Chamberlain flew to Las Vegas
23  on the flight Neumann had booked for her. When the flight landed, Ms. Chamberlain sent
24  a text message to Neumann, as he had instructed her to do, informing him that she had
25  arrived. Neumann responded that he was at Ceasar's Palace "at the pool" and instructed
26  Ms. Chamberlain to meet him there.

42.     Ms. Chamberlain took a cab from the airport to the hotel. When she arrived, a GHF consultant, Autumn Pippenburg, was waiting to bring her to her room so that she could drop off her bag and change into her swimsuit. It was at this time that Ms. Chamberlain learned that Neumann had only booked two rooms – one for her, and one that he would share with Ms. Pippenburg.

43.     Ms. Chamberlain brought her luggage to her room and changed into a swimsuit. Ms. Pippenburg then led her to the pool area.

44.     When the women arrived to the pool area, Ms. Chamberlain learned for the first time that Neumann had reserved space in the "adult" section of the pool, which permitted topless sunbathing.

45.     At one point, he began to kiss Ms. Pippenburg and instructed her to take off her top. He then turned to Ms. Chamberlain and said, with a smile, "it's your turn." Ms. Chamberlain refused and made clear that she was offended.

46.     After spending some time at the pool, Neumann led the group to the casino floor so he could gamble. During this time Ms. Chamberlain returned to her room. She ate dinner that night separately from Neumann and Ms. Pippenburg, and returned to her room to go to sleep.

<u>The Las Vegas Trip—Day Two</u>

47.     When Ms. Chamberlain awoke on Sunday morning, she sent a text message to Neumann, asking what time they were going to look at the billboard property. About thirty minutes later, Defendant Neumann called her hotel room and told her to meet him downstairs by the elevator.

48.     When Ms. Chamberlain arrived downstairs, she assumed they would be heading out to look at the property she had been brought to Las Vegas to review. She would certain learn that she was mistaken.

49. With Ms. Pippenburg having apparently left, Neumann was alone and indicated that he needed to eat. He suggested that the two of them get brunch before going to the property.

50. During their meal, Ms. Chamberlain suggested that Neumann reach out to the client to arrange a time to visit the property. Neumann then indicated that his phone was dead. The two then left the restaurant to purchase a phone charger.

51. After purchasing the phone charger, Neumann suggested they go to a bar and order some drinks while his phone recharged. They did so, and afterwards they went to another restaurant to watch the end of the Chicago Bears football game.

52. As they watched, Ms. Chamberlain again suggested that Neumann reach out to the client to schedule a specific time to visit the property. In response, Neumann suggested that they check the property out themselves, extend their stay an additional night, and take the client out to dinner.

53. Fancy client-development dinners were not something that Ms. Chamberlain had experienced before, and she was excited at the opportunity. She contacted her husband to get his thoughts on her staying an additional night. After confirming with her husband that he was amenable to her staying an additional night, Ms. Chamberlain told Neumann.

54. Visibly pleased, Neumann responded by smiling and asking her if he should "extend both rooms" for another night or "only his" – insinuating that he wanted to spend the night with her. Accustomed to such comments and used to dealing with them, Ms. Chamberlain did what she always did: She treated his invitation as a joke. She smiled, rolled her eyes, and indicated that she would need her own room for the night.

55. Neumann then suggested that they go visit the property, and he and Ms. Chamberlain took a cab to the property.

56. During the cab ride to the property, Neumann began looking at his phone and informed Ms. Chamberlain that he could not find the email with information about the

alleged property. When Ms. Chamberlain asked what he could remember about the property, Neumann responded that it was near a Harley Davidson dealership.

57. Frustrated at her boss's apparent disorganization but trying to be helpful, Ms. Chamberlain googled Harley Davidson dealerships on her cell phone and directed the cab driver to the only dealership in Las Vegas. When they arrived, they observed that the dealership already had multiple billboards on it, ruling out the property as a potential billboard placement.

58. Unable to find the correct property, Neumann suggested that they go to a strip club – the Spearmint Rhino – to get a drink and watch football while they waited for an employee to text message them with the proper address. This was not an entirely unusual request: Many of SMO's clients were strip club property owners, and Ms. Chamberlain had been to many similar establishments on behalf of SOM before. She even took a picture of the billboards outside the Spearmint Rhino when she arrived. So, although she was not excited at the proposal, and was irritated that Neumann kept dodging work, Ms. Chamberlain didn't suspect anything above and beyond Neumann's usual antics. To this day, she regrets that decision – perhaps more than any she's made in her life.

The Spearmint Rhino and Cab Ride Back

59. It was approximately noon on Sunday when Neumann and Ms. Chamberlain arrived at the Spearmint Rhino. They ordered a round of drinks as Neumann began talking to an exotic dancer.

60. After several more rounds of drinks, Neumann paid the woman for a "table dance" (an act where a dancer will touch, fondle, and rub against the patron for several minutes), and then asked her to dance on Ms. Chamberlain. Ms. Chamberlain refused, apologizing to the woman, and asking her to return to Neumann.

61. After the dance, another patron with whom Neumann had been chatting purchased a round of shots for the group.

- 12 -

62. After one or more additional rounds that her boss or his new friend had bought, things got very blurry very quickly.

63. Ms. Chamberlain's memory moving forward is mostly hazy, with isolated moments of clarity: She remembers Neumann helping her walk out of the strip club; she remembers collapsing on the ramp outside of the club, unable to stand; she remembers Neumann telling her that she "must have been roofied" as they waited for a cab; and she remembers passing out on the floor of the cab. From there forward, she has a vague recollection of Neumann carrying her, fireman style, through the halls of the hotel; and she remembers throwing up, profusely, in the hotel toilet.

64. At one point thereafter, Ms. Chamberlain awoke out of her unconscious (or semi-conscious) state to find herself lying on a bed with Neumann licking her vagina through her underwear and digitally penetrating her. Vaguely comprehending what was happening, she attempted to move and resist, but found herself unable to do so before quickly losing consciousness again.

65. Ms. Chamberlain started to regain consciousness that afternoon and was roused awake by the generic sound of a cell phone camera "clicking." She slowly opened her eyes to find herself lying on a bed with Neumann above her, seemingly taking photos of her partially naked and unconscious body.

66. Ms. Chamberlain tried to kick and protest. She demanded that he explain what he was doing. Neumann became instantly apologetic, and urged her to calm down.

67. Overwhelmed, confused, and upset, Ms. Chamberlain asked where she was and what had happened. Then she started to cry, and asked Neumann for her cell phone.

68. Neumann told Ms. Chamberlain that she had lost her phone at the Spearmint Rhino, and Ms. Chamberlain asked Neumann for his phone. She groggily attempted to call Rob Holmberg, one of her co-workers at SOM. When Holmberg did not answer, she attempted to send him a text message, from Neumann's phone.

- 13 -

69.     As Ms. Chamberlain waited for him to respond, she began to be overcome with a sense of disorientation and exhaustion. The room started spinning and, again, she lost consciousness.

70.     When Ms. Chamberlain regained consciousness, she was still lying on the bed. Neumann was on the phone with someone – who, upon information and belief, was Neumann's friend, retired Chicago Police Officer Tom Goggins. While on the phone, Neumann came over to Ms. Chamberlain, rubbed and kissed her butt and then walked away.

71.     Finally coherent enough to realize what was happening, and alert enough to stand on her own, Ms. Chamberlain got off the bed and asked where her clothes were. Neumann informed her and Ms. Chamberlain quickly got dressed.

72.     Neumann then gave Ms. Chamberlain her cell phone, which he claimed to have gotten back from the Spearmint Rhino.

73.     In her disoriented state, Ms. Chamberlain inadvertently dialed a colleague without realizing it. The colleague texted her back and asked if everything was "okay." Ms. Chamberlain responded "no," and indicated that she "couldn't talk" because Neumann was still there. The colleague responded by instructing her to go to security immediately, "or pull the fire alarm if you need to."

74.     On her way back to her room, she called the same colleague. When she told him what had happened with Neumann, he informed her that Defendant Neumann had a history of sexually violent behavior.

75.     After this phone call, Ms. Chamberlain called Mr. Holmberg. He informed Ms. Chamberlain that Neumann had called him, worried that she would claim he "did something to her." Ms. Chamberlain told Mr. Holmberg what happened and he instructed her to contact the authorities.

76.     Still disoriented and confused but deeply upset and sick to her stomach, Chamberlain went to hotel security and asked to see the surveillance footage of her

returning to the hotel – hoping to piece together what happened between the Spearmint Rhino and her waking up in Neumann's bed. After hearing her story, hotel security immediately called the Las Vegas Police Department who took her to a hospital for medical examination and DNA testing.

77. Ms. Chamberlain was provided several options for an exam at the hospital, and submitted to a thorough gynecological exam to evaluate possible injuries.

78. She was then told by police that forensic investigators would need to take photos of the inside of her body, to document the bruising to her throat and the hernia on her rectum that medical personnel had observed. Feeling like she had already been violated (and photographed) enough, Ms. Chamberlain informed police that she was not comfortable with such an invasive investigation.

79. The next morning, Ms. Chamberlain called SOM Senior Vice President Kevin Hoppe. She explained that some "bad stuff" had happened with Neumann over the weekend that she did not want to discuss, but she would explain more in person. Still concerned about keeping her job, she asked if Hoppe would keep it between them until she could speak with him in person.

80. During the call with Hoppe, Ms. Chamberlain also requested that she be placed on a new flight, so that she wouldn't have to be on the same plane as Neumann, and asked for time off work. Mr. Hoppe approved the requests, and indicated that he would speak with Neumann to "get his side of the story."

### Return to Arizona

81. Ms. Chamberlain returned to Arizona deeply traumatized. She didn't know how to process the violation that had been visited upon her. She didn't know what this meant for her body or her well-being.

82. Ms. Chamberlain also didn't know what any of this meant for her career and future plans. She wanted to return to work, but couldn't stomach the thought. She

1  scheduled a time to meet with Hoppe and CFO Kathleen De Volld and tell them what

2  happened. They told her to take time off and they would get Neumann's "side of the story."

3      83.    Ms. Chamberlain immediately began experiencing symptoms of severe

4  trauma – intense anxiety, depression, and insomnia. She saw a trauma specialist who

5  recommended she undergo treatment.

6      84.    Ms. Chamberlain was petrified at the thought of returning to work. Neumann

7  was not merely an employee who she could avoid if necessary. He was the company owner.

8  And no one had ever held him accountable for his abuse of other employees.

9      85.    Ms. Chamberlain felt she had no recourse against Neumann and no path to

10 return to her job. Moreover, she had learned that SOM leadership had inexplicably *moved*

11 *Neumann into Ms. Chamberlain's office*, which meant that she if she returned, she would

12 have to share an office with the man who had sexually assaulted her.

13     86.    Believing that she had no other choice, Ms. Chamberlain eventually informed

14 SOM leadership that she would not be returning to the company.

15     87.    Almost immediately thereafter, SOM pursued major corporate restructuring

16 that had not been previously discussed with employees: On October 24, 2016, Neumann

17 formed Shout Outdoor Media, LLC in Delaware. In late November and early December

18 2016, Neumann dissolved Shout Outdoor Media, LLC with the Illinois Corporation

19 Commission and formed a new version of Shout Outdoor Media, LLC in Illinois, omitting

20 himself as the statutory agent of this new company. At this same time, he formed Shout

21 Outdoor Media LLC in Delaware; formed Shout Outdoor Media Arizona, LLC (a Delaware

22 limited liability company that was a wholly owned subsidiary of the Delaware Shout

23 Outdoor Media, LLC); and merged the Missouri Shout Outdoor Media, LLC with the

24 Delaware Shout Outdoor Media, LLC.

25

26

- 16 -

///

## FIRST CLAIM FOR RELIEF
### Assault and Battery
### (Against All Defendants)

88. Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

89. As set forth herein, Neumann caused harmful or offensive contact with Ms. Chamberlain by among other things, non-consensually engaging in oral sex, digitally penetrating her while she was passed out, and putting her in the immediate apprehension of harm by standing above her and photographing her without her consent.

90. As a direct and proximate cause of Neumann's harmful and offensive contact, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

91. As set forth herein, Neumann was acting within the course and scope of his employment with SOM and GHF when he made his offensive contact, and threats of offensive contact, with Ms. Chamberlain. Neumann was on a company-sponsored business trip, performing an act he was authorized to perform; and his actions were motivated, at least in part, by a purpose to serve both SOM and GHF.

92. Because Neumann was acting within the course and scope of his employment for SOM and GHF, SOM and GHF are vicariously liable for the damages caused by his tortious conduct.

## SECOND CLAIM FOR RELIEF
### Negligence
### (Against All Defendants)

93. Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

- 17 -

94.    Neumann, SOM, and GHF owed a duty of reasonable care to Ms. Chamberlain, namely, to treat her at all times as a reasonable person on under the circumstances would.

95.    Neumann breached this duty of care to Ms. Chamberlain when he got her intoxicated; then, per his own statements allowed her to be drugged (or drugged her himself); then carried her back to his hotel room where he sexually assaulted her and surreptitiously took photographs of her that he, upon information and belief, forwarded to others.

96.    SOM and GHF breached their respective duties of care to Ms. Chamberlain by negligently allowing Neumann to be in a continued position of power over her where she would feel compelled to drink with him, go to a strip club with him, and be in a position where he could sexually assault her.

97.    Any reasonable business in the these companies' position would have trained, supervised, investigated, and ultimately disciplined an employee behaving like Neumann long before he ever had an opportunity to assault Ms. Chamberlain, and it was their cumulative negligence that allowed Neumann to be in a position to do what he did to her.

98.    As a direct and proximate result of these actions and failures, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

99.    In addition to their direct liability, SOM and GHF are also vicariously liable for Neumann's acts and omissions insofar as he was acting within the course and scope of his employment.

### THIRD CLAIM FOR RELIEF
#### Negligence Per Se Under Arizona Law
#### (Against All Defendants)

100.    Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

101. A.R.S. § 13-1406(A) prohibits a person from "intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without the consent of such person."

102. A.R.S. § 13-1406(A) was enacted for the protection of the class of individuals of which Ms. Chamberlain was a member, i.e. persons who do not consent to sexual intercourse or oral sex.

103. At the time of the events alleged herein, Neumann "intentionally and knowingly" engaged in "oral sexual contact" with Ms. Chamberlain who did not, and was not capable of, providing consent to such acts.

104. Neumann violated A.R.S. § 13-1406(A).

105. Ms. Chamberlain was injured as a direct and proximate cause of Defendant Neumann's violation of A.R.S. § 13-1406(A).

106. As a result of the foregoing, Ms. Chamberlain suffered damages in an amount to be proven at trial.

107. As set forth herein, Neumann was acting within the course and scope of his employment with SOM and GHF when he made contact with Ms. Chamberlain,

108. SOM and GHF are vicariously liable for Neumann's acts and omissions insofar as he was acting within the course and scope of his employment.

## FOURTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

109. Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

110. Neumann's above-described conduct was extreme and outrageous because an average member of the community would regard the conduct as atrocious, intolerable in civilized society, and beyond all possible bounds of decency.

111. Neumann's above-described conduct was intentional insofar as he intended to cause Ms. Chamberlain emotional distress.

112. Neumann's conduct was reckless because he either was aware of, or consciously disregarded the near certainty that his actions would cause Ms. Chamberlain emotional distress.

113. Neumann's above-described conduct did, in fact, cause Ms. Chamberlain to suffer emotional distress.

114. As a direct and proximate result of Neumann's actions, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

115. SOM and GHF are vicariously liable for Neumann's acts and omissions insofar as he was acting within the course and scope of his employment.

## FIFTH CLAIM FOR RELIEF
### Invasion of Privacy
### (Against All Defendants)

116. Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

117. Neumann intentionally interfered with or invaded Ms. Chamberlains' privacy by, upon information and belief, taking photographs of her naked or semi-naked body without per authorization or consent.

118. Neumann's invasion of Ms. Chamberlain's privacy would be highly offensive to a reasonable person: A reasonable person in the same or similar circumstances as Ms. Chamberlain, learning that Neumann was taking photographs of her unconscious on a bed in a state of undress, would feel seriously upset or embarrassed by the invasion.

119. Neumann's invasion of Ms. Chamberlain's privacy caused serious emotional injuries to her.

120. As a direct and proximate result of Neumann's actions, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

1    121.  SOM and GHF are vicariously liable for Neumann's acts and omissions

2    insofar as he was acting within the course and scope of his employment.

3                              **PRAYER FOR RELIEF**

4         WHEREFORE, Plaintiff Brienna Chamberlain hereby requests that the Court enter

5    judgment against the Defendants as follows:

6         A.    For special damages in an amount sufficient to compensate Ms. Chamberlain

7               fully and fairly for the injuries she has sustained, including but not limited to

8               her medical expenses and lost wages;

9         B.    For general, consequential, special, and compensatory damages, including but

10              not limited to her pain and suffering, mental anguish, emotional suffering, and

11              loss of enjoyment of life;

12        C.    For nominal damages as provided for by law;

13        D.    For prejudgment interest on all liquidated sums;

14        E.    For **punitive damages** in an amount sufficient to punish defendants and deter

15              future reprehensible conduct;

16        F.    For attorneys' fees as provided for by law;

17        G.    For Ms. Chamberlain's costs and other expenses incurred in this action; and

18        H.    For such other and further relief as the Court deems just.

19        RESPECTFULLY SUBMITTED this 28th day of September, 2018.

20                              THE PEOPLE'S LAW FIRM
                               645 North 4th Avenue, Suite A
21                             Phoenix, Arizona 85003

22

23                             By: _____
                                   Stephen D. Benedetto
24                                 Heather Hamel

25                             *Attorneys for Plaintiff Brienna Chamberlain*

26

                                     - 21 -

# EXHIBIT 2

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Brienna Chamberlain*

IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman,<br><br>Plaintiff,<br><br>v.<br><br>JAMES NEUMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X;<br><br>Defendants. | Case No. CV2018-012269<br><br>**FIRST AMENDED COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

For her Complaint against Defendants James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC, Plaintiff Brienna Chamberlain, hereby alleges as follows:

## **PARTIES**

1.      Plaintiff Brienna Chamberlain is a married woman residing in Phoenix, Arizona.

2.      Upon information and belief, Defendant James Neumann is a married man who owns a home in Paradise Valley, Arizona, and resides for at least part of the year in Arizona.

3.      Upon information and belief, at the time of the events that gave rise to this Complaint Defendant Shout Outdoor Media, LLC ("SOM") was a Missouri limited liability company that is duly licensed to do business in Maricopa County, Arizona.  SOM is responsible for establishing, administering, and applying company-wide policies, which directly affect all employees.  During the times relevant to this Complaint, SOM employed Ms. Chamberlain at its location in Maricopa County.

4.      Upon information and belief, at the time of the events that gave rise to this Complaint, Defendant Glass Half Full, LLC ("GHF") was an Illinois limited liability company that is duly licensed to do business in Maricopa County.  GHF is responsible for establishing, administering, and applying company-wide policies, which directly affect all employees.

5.      For the purpose of this Complaint, SOM and GHF are each responsible for Neumann's wrongful acts and omissions under the doctrine of *respondeat superior*.

6.      John and Jane Does I-X, ABC Corporations, and Black and White Partner are fictional defendants, so named on information and belief, whose names will be substituted with the names of actual defendants once their names become known.

## JURISDICTION AND VENUE

7.      The Maricopa County Superior Court has jurisdiction over this action pursuant to Article VI, section 14 of the Arizona Constitution and A.R.S. § 12-123.

8.      Venue is proper in this Court insofar as Plaintiff resides in this county, Defendant Neumann owns property in this County, and SOM and GHF both operate businesses that are duly licensed to do business in this County.

9.     This case presents an actual case in controversy arising under Arizona state law.

**GENERAL ALLEGATIONS**

Neumann Builds a Restaurant Empire

10.     Neumann is a successful marketing professional and, more recently, restauranteur.  After starting his career in outdoor media, installing billboard signs for 3M, Neumann developed a talent for outdoor marketing.  A charismatic and effective salesman, he quickly moved up the corporate chain, becoming the youngest Vice President in 3M's 110-year history.  Since then, he has worked for and started numerous media firms, and earned the award "100 Marketers Who Changed American Culture."[1]

11.     Neumann parlayed this early success and praise into his own businesses.  In 2004, he founded AdOne Media, Inc., an outdoor marketing company incorporated in Nevada and based in St. Louis, Missouri.  After facing civil lawsuits for alleged racketeering and sexual assault, Neumann shuttered AdOne, moved to Chicago, and began to explore developing a presence in Scottsdale, Arizona.

12.     In 2016, Neumann opened Glass Half Full, LLC, a parent company to scores of restaurants and bars all over the country.  Through this company (and others of the same name), Defendant Neumann opened Optima, a two-story rock n'roll bar and lounge based in downtown Chicago; The Rabbit Hole, an "Alice in Wonderland" themed bar in the same, hip neighborhood; and Wild Child, an upscale Chicago eatery with a "Soho, New York type feel."[2]  In the Phoenix metropolitan-area, Neumann opened Old Town Gringos, the Hatter and Hare, and Camp Social—novelty-theme bars that quickly became, along with Neumann himself, hallmarks of the Valley's social scene.

---

[1] *See* https://j-neuman.tumblr.com/post/173664680813/jim-neumann-a-marketer-who-changed-american
[2] Hall, Gina, "Chicago Restaurant group moving to Phoenix, citing more 'opportunity,'" Chicago Business Journal, May 16, 2017, available at:
https://www.bizjournals.com/chicago/news/2017/05/16/chicago-restaurant-group-moving-to-phoenix-citing.html

<u>Neumann's History of Sexual Harassment and Abuse</u>

13.     Among those with whom he has worked, Neumann is known for more than his trendy bars and vast fortune.  In fact, many of his employees, especially his female employees, tell a much different story.  These women discuss Neumann in whispers and warnings.  They recount a years-long pattern, where Neumann would use his power to sexually exploit scores of women.  These women have witnessed or experienced the indignities of being harassed, propositioned, forcibly kissed, groped, fondled, or assaulted by Neumann – bearing this abuse in angry silence or through fake smiles, learning that if they played off his advances with humor they could avoid upsetting him and potentially losing their ability to make ends meet.

14.     The most public example of Neumann's misconduct came in 2007, when he was still running AdOne in St. Louis.  Sherry Flotron, one of Neumann's employees filed a lawsuit alleging that Neumann had begun sexually harassing her almost immediately upon her hiring; that he would comment on her "nice ass" or repeatedly inquire about her underwear; and that, on one business trip to Chicago in which Defendant Neumann isolated her, forcibly kissed her, and propositioned her for sex (removing his shirt and demanding a back rub when she turned him down). [3] In another incident that eerily echoes Ms. Chamberlain's experience, Ms. Flotron alleged that Neumann lured her to Las Vegas under the pretense of a business trip.  Once there, Neumann sexually assaulted Flotron by undressing himself, climbing on top of her, and masturbating and ejaculating onto her while she slept.[4]  The jury in that case awarded her $1.1 million.

---

[3] Hamilton, Keegan; *Stripped Bare:  Sometimes Even Chesterfield CEOS like Jim Neumann, Must Stand Naked*; RiverFront Times, March 19, 2008, available at: https://www.riverfronttimes.com/stlouis/stripped-bare-sometimes-even-chesterfield-ceos-like-jim-neumann-must-stand-naked/Content?oid=2454135.
[4] *Id*.

15.     Nearly a decade later, one of Ms. Chamberlain's coworkers recalled similar conduct.  She disclosed a time that Neumann encouraged her to bend over in front of him, presumably so that he could ogle her.  She recalls Neumann's first remarks to her after she was hired:  "Damn! There goes my chances of sleeping with you…. Or does it?"  She recalls observing Neumann routinely and non-consensually touching female employees.  And she remembers all tell well the time that Neumann followed her into very small supply closet, getting uncomfortably close to her in an enclosed space.

16.     These stories are simply examples of a widespread trend.  In fact, it appears that virtually all of Neumann's female employees experienced some form of sexual harassment or assault:  Neumann would regularly grope and grab employees' butts without permission, would attempt to kiss them, would coerce or request that they stroke his penis when he offered them rides home, and would routinely send sexually explicit text messages to female employees over group message threads.

<u>Brienna Chamberlain Begins Working for Neumann</u>

17.     In 2014, Brienna Chamberlain was looking for work.  A 2010 graduate of Arizona State University, Ms. Chamberlain wanted to pursue a career in medicine, serving marginalized populations abroad, particularly in Africa.  To lay a foundation for her career, she spent much of the first five years of her career working in Non-Governmental Organizations.  She volunteered at a home that housed orphaned children in Kenya.  She worked for a Phoenix-based support center for homeless teens, and she spent time working as a teacher in South Africa.

18.     To supplement her volunteer work, Ms. Chamberlain worked part-time as a bartender, as she had during her college years.

19.     In 2014, Ms. Chamberlain received a call from an old colleague, Dave Corba, with a job opportunity.  He wanted her to help him open a bar – "Old Town Gringos" in

Old Town Scottsdale – that had recently been purchased by a new company called Glass Half Full, LLC ("GHF").

20.     At the time, Ms. Chamberlain was unaware that GHF was owned by Neumann, had never met him, and was wholly naïve about his history of sexual predatory behavior.

21.     Ms. Chamberlain worked hard as a bartender at "Old Town Gringos," and it didn't take long for her exceptional work ethic and obvious intelligence to stand out. Within weeks of starting, Ms. Chamberlain was singled out for attention by Neumann.

22.     Neumann expressed to Ms. Chamberlain that her education and skill-set would be better utilized in a management position than behind the bar, and he moved her into a position as the sales/public relations manager for GHF.

23.     Part of Ms. Chamberlain's job responsibilities at GHF included marketing and promotions, which required her to work with SOM, Neumann's other company.

24.     Before long, Ms. Chamberlain was managing and assisting SOM employees, and was actively working for both GHF and SOM, while earning an annual salary of approximately $30,000. This dual employment was not unusual. GHF and SOM were both owned by Neumann, worked closely together, and had numerous employees who did work for both businesses, irrespective of which business ultimately signed their paycheck.

25.     In the summer of 2017, Neumann transferred Ms. Chamberlain to SOM full-time, to work as its real estate developer.

26.     As a managerial employee for SOM, Ms. Chamberlain was required to sign an "Employment Agreement" confirming that although her employer was formally Shout Outdoor Media, it was a holding company for Shout Outdoor Marketing, Glass Half Full, LLC, and Airespot/Passport, a technology company.

<u>Neumann's Sexual Harassment of Ms. Chamberlain begins</u>

27. During Ms. Chamberlain's employment at GHF and SOM, she observed Neumann's regular acts of sexual harassment of other female employees. She observed him talking openly, and inappropriately, of his sexual encounters; groping and even kissing female employees, many of whom did not want such attention; and bragging about cheating on his wife so often that he developed his own clever slogan for it ("My wife is married, but I'm not.").

28. Neumann did not spare Ms. Chamberlain from such abuse. At work, he would regularly grab and grope her buttocks and make inappropriate comments about her attractiveness, her body, or his sexual preferences. Uncomfortable with his actions but feeling powerless to do anything about it without risking her job, Ms. Chamberlain learned to mimic the way her female co-workers would respond to him: slapping his hand off of her body while smiling, chuckling, and rolling her eyes at him to deflect from the conduct.

29. One night, a visibly intoxicated Neumann attempted to kiss Ms. Chamberlain while they were at the bar after work. When Ms. Chamberlain rebuffed his untoward advances, Neumann became enraged and stormed out of the bar.

30. Ms. Chamberlain, like many of her female co-workers, continued to worry about upsetting Neumann by denying his advances. Despite Neumann's abuse, Ms. Chamberlain took pride in her career and was pleased with how quickly she had advanced. She was regularly working with clients and contractors twice her age, managing large advertising portfolios, and was quickly learning a business she knew nothing about. She felt like maintaining this important piece of her identity – her career – depended on keeping her boss happy. So, like her other female coworkers, Ms. Chamberlain simply found ways to deal with her boss's behavior, repugnant as it often was, without putting her job at risk.

<u>The Las Vegas Trip—Day One</u>

31.     In September 2016, Neumann told Ms. Chamberlain that he would be taking a business trip to Las Vegas to conduct due diligence on a property that a client wished to explore for placement of a new billboard.

32.     Skeptical that Neumann simply wanted her to come to Las Vegas to party with him and his friends, and not interested in such an invitation, Ms. Chamberlain specifically confirmed with him that this trip was for business purposes.  Neumann confirmed the existence of the potential property and shared more details with Ms. Chamberlain.

33.     Satisfied that this was a work trip with a real business objective – to inspect and assess a property for a client's desired billboard – Ms. Chamberlain agreed to go to Las Vegas.  Neumann then booked her flight.

34.     As initially planned and communicated to Ms. Chamberlain, the business trip was supposed to be for two days:  She would arrive Saturday morning and leave Sunday afternoon.

35.     On Saturday morning, October 1, 2016, Ms. Chamberlain flew to Las Vegas on the flight Neumann had booked for her.  When the flight landed, Ms. Chamberlain sent a text message to Neumann, as he had instructed her to do, informing him that she had arrived.  Neumann responded that he was at Ceasar's Palace "at the pool" and instructed Ms. Chamberlain to meet him there.

36.     Ms. Chamberlain took a cab from the airport to the hotel.  When she arrived, a GHF consultant, Autumn Pippenburg, was waiting to bring her to her room so that she could drop off her bag and change into her swimsuit.  It was at this time that Ms. Chamberlain learned that Neumann had only booked two rooms – one for her, and one that he would share with Ms. Pippenburg.

37.     Ms. Chamberlain brought her luggage to her room and changed into a swimsuit.  Ms. Pippenburg then led her to the pool area.

38.     When the women arrived to the pool area, Ms. Chamberlain learned for the first time that Neumann had reserved space in the "adult" section of the pool, which permitted topless sunbathing.

39.     At one point, he began to kiss Ms. Pippenburg and instructed her to take off her top. He then turned to Ms. Chamberlain and said, with a smile, "it's your turn." Ms. Chamberlain refused and made clear that she was offended.

40.     After spending some time at the pool, Neumann led the group to the casino floor so he could gamble. During this time Ms. Chamberlain returned to her room. She ate dinner that night separately from Neumann and Ms. Pippenburg, and returned to her room to go to sleep.

### The Las Vegas Trip—Day Two

41.     When Ms. Chamberlain awoke on Sunday morning, she sent a text message to Neumann, asking what time they were going to look at the billboard property. About thirty minutes later, Defendant Neumann called her hotel room and told her to meet him downstairs by the elevator.

42.     When Ms. Chamberlain arrived downstairs, she assumed they would be heading out to look at the property she had been brought to Las Vegas to review. She would certain learn that she was mistaken.

43.     With Ms. Pippenburg having apparently left, Neumann was alone and indicated that he needed to eat. He suggested that the two of them get brunch before going to the property.

44.     During their meal, Ms. Chamberlain suggested that Neumann reach out to the client to arrange a time to visit the property. Neumann then indicated that his phone was dead. The two then left the restaurant to purchase a phone charger.

45. After purchasing the phone charger, Neumann suggested they go to a bar and order some drinks while his phone recharged. They did so, and afterwards they went to another restaurant to watch the end of the Chicago Bears football game.

46. As they watched, Ms. Chamberlain again suggested that Neumann reach out to the client to schedule a specific time to visit the property. In response, Neumann suggested that they check the property out themselves, extend their stay an additional night, and take the client out to dinner.

47. Fancy client-development dinners were not something that Ms. Chamberlain had experienced before, and she was excited at the opportunity. She contacted her husband to get his thoughts on her staying an additional night. After confirming with her husband that he was amenable to her staying an additional night, Ms. Chamberlain told Neumann.

48. Visibly pleased, Neumann responded by smiling and asking her if he should "extend both rooms" for another night or "only his" – insinuating that he wanted to spend the night with her. Accustomed to such comments and used to dealing with them, Ms. Chamberlain did what she always did: She treated his invitation as a joke. She smiled, rolled her eyes, and indicated that she would need her own room for the night.

49. Neumann then suggested that they go visit the property, and he and Ms. Chamberlain took a cab to the property.

50. During the cab ride to the property, Neumann began looking at his phone and informed Ms. Chamberlain that he could not find the email with information about the alleged property. When Ms. Chamberlain asked what he could remember about the property, Neumann responded that it was near a Harley Davidson dealership.

51. Frustrated at her boss's apparent disorganization but trying to be helpful, Ms. Chamberlain googled Harley Davidson dealerships on her cell phone and directed the cab driver to the only dealership in Las Vegas. When they arrived, they observed that the

1  dealership already had multiple billboards on it, ruling out the property as a potential

2  billboard placement.

3       52.    Unable to find the correct property, Neumann suggested that they go to a strip

4  club – the Spearmint Rhino – to get a drink and watch football while they waited for an

5  employee to text message them with the proper address.  This was not an entirely unusual

6  request:  Many of SMO's clients were strip club property owners, and Ms. Chamberlain

7  had been to many similar establishments on behalf of SOM before.  She even took a picture

8  of the billboards outside the Spearmint Rhino when she arrived.  So, although she was not

9  excited at the proposal, and was irritated that Neumann kept dodging work, Ms.

10  Chamberlain didn't suspect anything above and beyond Neumann's usual antics.  To this

11  day, she regrets that decision – perhaps more than any she's made in her life.

The Spearmint Rhino and Cab Ride Back

13       53.    It was approximately noon on Sunday when Neumann and Ms. Chamberlain

14  arrived at the Spearmint Rhino.  They ordered a round of drinks as Neumann began talking

15  to an exotic dancer.

16       54.    After several more rounds of drinks, Neumann paid the woman for a "table

17  dance" (an act where a dancer will touch, fondle, and rub against the patron for several

18  minutes), and then asked her to dance on Ms. Chamberlain.  Ms. Chamberlain refused,

19  apologizing to the woman, and asking her to return to Neumann.

20       55.    After the dance, another patron with whom Neumann had been chatting

21  purchased a round of shots for the group.

22       56.    After one or more additional rounds that her boss or his new friend had

23  bought, things got very blurry very quickly.

24       57.    Ms. Chamberlain's memory moving forward is mostly hazy, with isolated

25  moments of clarity:  She remembers Neumann helping her walk out of the strip club; she

26  remembers collapsing on the ramp outside of the club, unable to stand; she remembers

Neumann telling her that she "must have been roofied" as they waited for a cab; and she remembers passing out on the floor of the cab. From there forward, she has a vague recollection of Neumann carrying her, fireman style, through the halls of the hotel; and she remembers throwing up, profusely, in the hotel toilet.

58. At one point thereafter, Ms. Chamberlain awoke out of her unconscious (or semi-conscious) state to find herself lying on a bed with Neumann licking her vagina through her underwear and digitally penetrating her. Vaguely comprehending what was happening, she attempted to move and resist, but found herself unable to do so before quickly losing consciousness again.

59. Ms. Chamberlain started to regain consciousness that afternoon and was roused awake by the generic sound of a cell phone camera "clicking." She slowly opened her eyes to find herself lying on a bed with Neumann above her, seemingly taking photos of her partially naked and unconscious body.

60. Ms. Chamberlain tried to kick and protest. She demanded that he explain what he was doing. Neumann became instantly apologetic, and urged her to calm down.

61. Overwhelmed, confused, and upset, Ms. Chamberlain asked where she was and what had happened. Then she started to cry, and asked Neumann for her cell phone.

62. Neumann told Ms. Chamberlain that she had lost her phone at the Spearmint Rhino, and Ms. Chamberlain asked Neumann for his phone. She groggily attempted to call Rob Holmberg, one of her co-workers at SOM. When Holmberg did not answer, she attempted to send him a text message, from Neumann's phone.

63. As Ms. Chamberlain waited for him to respond, she began to be overcome with a sense of disorientation and exhaustion. The room started spinning and, again, she lost consciousness.

64. When Ms. Chamberlain regained consciousness, she was still lying on the bed. Neumann was on the phone with someone – who, upon information and belief, was

Neumann's friend, retired Chicago Police Officer Tom Goggins. While on the phone, Neumann came over to Ms. Chamberlain, rubbed and kissed her butt and then walked away.

65. Finally coherent enough to realize what was happening, and alert enough to stand on her own, Ms. Chamberlain got off the bed and asked where her clothes were. Neumann informed her and Ms. Chamberlain quickly got dressed.

66. Neumann then gave Ms. Chamberlain her cell phone, which he claimed to have gotten back from the Spearmint Rhino.

67. In her disoriented state, Ms. Chamberlain inadvertently dialed a colleague without realizing it. The colleague texted her back and asked if everything was "okay." Ms. Chamberlain responded "no," and indicated that she "couldn't talk" because Neumann was still there. The colleague responded by instructing her to go to security immediately, "or pull the fire alarm if you need to."

68. On her way back to her room, she called the same colleague. When she told him what had happened with Neumann, he informed her that Defendant Neumann had a history of sexually violent behavior.

69. After this phone call, Ms. Chamberlain called Mr. Holmberg. He informed Ms. Chamberlain that Neumann had called him, worried that she would claim he "did something to her." Ms. Chamberlain told Mr. Holmberg what happened and he instructed her to contact the authorities.

70. Still disoriented and confused but deeply upset and sick to her stomach, Chamberlain went to hotel security and asked to see the surveillance footage of her returning to the hotel – hoping to piece together what happened between the Spearmint Rhino and her waking up in Neumann's bed. After hearing her story, hotel security immediately called the Las Vegas Police Department who took her to a hospital for medical examination and DNA testing.

71.     Ms. Chamberlain was provided several options for an exam at the hospital, and submitted to a thorough gynecological exam to evaluate possible injuries.

72.     She was then told by police that forensic investigators would need to take photos of the inside of her body, to document the bruising to her throat and the hernia on her rectum that medical personnel had observed. Feeling like she had already been violated (and photographed) enough, Ms. Chamberlain informed police that she was not comfortable with such an invasive investigation.

73.     The next morning, Ms. Chamberlain called SOM Senior Vice President Kevin Hoppe. She explained that some "bad stuff" had happened with Neumann over the weekend that she did not want to discuss, but she would explain more in person. Still concerned about keeping her job, she asked if Hoppe would keep it between them until she could speak with him in person.

74.     During the call with Hoppe, Ms. Chamberlain also requested that she be placed on a new flight, so that she wouldn't have to be on the same plane as Neumann, and asked for time off work. Mr. Hoppe approved the requests, and indicated that he would speak with Neumann to "get his side of the story."

Return to Arizona

75.     Ms. Chamberlain returned to Arizona deeply traumatized. She didn't know how to process the violation that had been visited upon her. She didn't know what this meant for her body or her well-being.

76.     Ms. Chamberlain also didn't know what any of this meant for her career and future plans. She wanted to return to work, but couldn't stomach the thought. She scheduled a time to meet with Hoppe and CFO Kathleen De Volld and tell them what happened. They told her to take time off and they would get Neumann's "side of the story."

77.     Ms. Chamberlain immediately began experiencing symptoms of severe trauma – intense anxiety, depression, and insomnia.  She saw a trauma specialist who recommended she undergo treatment.

78.     Ms. Chamberlain was petrified at the thought of returning to work.  Neumann was not merely an employee who she could avoid if necessary.  He was the company owner.  And no one had ever held him accountable for his abuse of other employees.

79.     Ms. Chamberlain felt she had no recourse against Neumann and no path to return to her job.  Moreover, she had learned that SOM leadership had inexplicably *moved Neumann into Ms. Chamberlain's office*, which meant that she if she returned, she would have to share an office with the man who had sexually assaulted her.

80.     Believing that she had no other choice, Ms. Chamberlain eventually informed SOM leadership that she would not be returning to the company.

81.     Almost immediately thereafter, SOM pursued major corporate restructuring that had not been previously discussed with employees:   On October 24, 2016, Neumann formed Shout Outdoor Media, LLC in Delaware.  In late November and early December 2016, Neumann dissolved Shout Outdoor Media, LLC with the Illinois Corporation Commission and formed a new version of Shout Outdoor Media, LLC in Illinois, omitting himself as the statutory agent of this new company.  At this same time, he formed Shout Outdoor Media LLC in Delaware; formed Shout Outdoor Media Arizona, LLC (a Delaware limited liability company that was a wholly owned subsidiary of the Delaware Shout Outdoor Media, LLC); and merged the Missouri Shout Outdoor Media, LLC with the Delaware Shout Outdoor Media, LLC.

/ / /

## FIRST CLAIM FOR RELIEF
### Assault and Battery
### (Against All Defendants)

82.     Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

83.     As set forth herein, Neumann caused harmful or offensive contact with Ms. Chamberlain by among other things, non-consensually engaging in oral sex, digitally penetrating her while she was passed out, and putting her in the immediate apprehension of harm by standing above her and photographing her without her consent.

84.     As a direct and proximate cause of Neumann's harmful and offensive contact, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

85.     As set forth herein, Neumann was acting within the course and scope of his employment with SOM and GHF when he made his offensive contact, and threats of offensive contact, with Ms. Chamberlain. Neumann was on a company-sponsored business trip, performing an act he was authorized to perform; and his actions were motivated, at least in part, by a purpose to serve both SOM and GHF.

86.     Because Neumann was acting within the course and scope of his employment for SOM and GHF, SOM and GHF are vicariously liable for the damages caused by his tortious conduct.

## SECOND CLAIM FOR RELIEF
### Negligence
### (Against All Defendants)

87.     Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

88.     Neumann, SOM, and GHF owed a duty of reasonable care to Ms. Chamberlain, namely, to treat her at all times as a reasonable person on under the circumstances would.

89.     Neumann breached this duty of care to Ms. Chamberlain when he got her intoxicated; then, per his own statements allowed her to be drugged (or drugged her himself); then carried her back to his hotel room where he sexually assaulted her and surreptitiously took photographs of her that he, upon information and belief, forwarded to others.

90.     SOM and GHF breached their respective duties of care to Ms. Chamberlain by negligently allowing Neumann to be in a continued position of power over her where she would feel compelled to drink with him, go to a strip club with him, and be in a position where he could sexually assault her.

91.     Any reasonable business in the these companies' position would have trained, supervised, investigated, and ultimately disciplined an employee behaving like Neumann long before he ever had an opportunity to assault Ms. Chamberlain, and it was their cumulative negligence that allowed Neumann to be in a position to do what he did to her.

92.     As a direct and proximate result of these actions and failures, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

93.     In addition to their direct liability, SOM and GHF are also vicariously liable for Neumann's acts and omissions insofar as he was acting within the course and scope of his employment.

### THIRD CLAIM FOR RELIEF
**Negligence Per Se Under Arizona Law**
**(Against All Defendants)**

94.     Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

95.     A.R.S. § 13-1406(A) prohibits a person from "intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without the consent of such person."

1      96.     A.R.S. § 13-1406(A) was enacted for the protection of the class of individuals

2 of which Ms. Chamberlain was a member, i.e. persons who do not consent to sexual

3 intercourse or oral sex.

4      97.     At the time of the events alleged herein, Neumann "intentionally and

5 knowingly" engaged in "oral sexual contact" with Ms. Chamberlain who did not, and was

6 not capable of, providing consent to such acts.

7      98.     Neumann violated A.R.S. § 13-1406(A).

8      99.     Ms. Chamberlain was injured as a direct and proximate cause of Defendant

9 Neumann's violation of A.R.S. § 13-1406(A).

10      100.    As a result of the foregoing, Ms. Chamberlain suffered damages in an amount

11 to be proven at trial.

12      101.    As set forth herein, Neumann was acting within the course and scope of his

13 employment with SOM and GHF when he made contact with Ms. Chamberlain,

14      102.    SOM and GHF are vicariously liable for Neumann's acts and omissions

15 insofar as he was acting within the course and scope of his employment.

16

17 **FOURTH CLAIM FOR RELIEF**

18 **Intentional Infliction of Emotional Distress**<br>**(Against All Defendants)**

19      103.    Ms. Chamberlain hereby incorporates by reference the allegations contained

20 in the foregoing paragraphs as if they were fully set forth herein.

21      104.    Neumann's above-described conduct was extreme and outrageous because an

22 average member of the community would regard the conduct as atrocious, intolerable in

23 civilized society, and beyond all possible bounds of decency.

24      105.    Neumann's above-described conduct was intentional insofar as he intended

25 to cause Ms. Chamberlain emotional distress.

26

1    106.   Neumann's conduct was reckless because he either was aware of, or

2    consciously disregarded the near certainty that his actions would cause Ms. Chamberlain

3    emotional distress.

4    107.   Neumann's above-described conduct did, in fact, cause Ms. Chamberlain to

5    suffer emotional distress.

6    108.   As a direct and proximate result of Neumann's actions, Ms. Chamberlain was

7    injured and suffered damages in an amount to be proven at trial.

8    109.   SOM and GHF are vicariously liable for Neumann's acts and omissions

9    insofar as he was acting within the course and scope of his employment.

10   **FIFTH CLAIM FOR RELIEF**
     **Invasion of Privacy**
11   **(Against All Defendants)**

12   110.   Ms. Chamberlain hereby incorporates by reference the allegations contained

13   in the foregoing paragraphs as if they were fully set forth herein.

14   111.   Neumann intentionally interfered with or invaded Ms. Chamberlains' privacy

15   by, upon information and belief, taking photographs of her naked or semi-naked body

16   without per authorization or consent.

17   112.   Neumann's invasion of Ms. Chamberlain's privacy would be highly offensive

18   to a reasonable person:  A reasonable person in the same or similar circumstances as Ms.

19   Chamberlain, learning that Neumann was taking photographs of her unconscious on a bed

20   in a state of undress, would feel seriously upset or embarrassed by the invasion.

21   113.   Neumann's invasion of Ms. Chamberlain's privacy caused serious emotional

22   injuries to her.

23   114.   As a direct and proximate result of Neumann's actions, Ms. Chamberlain was

24   injured and suffered damages in an amount to be proven at trial.

25   115.   SOM and GHF are vicariously liable for Neumann's acts and omissions

26   insofar as he was acting within the course and scope of his employment.

## SIXTH CLAIM FOR RELIEF

### (Hostile Work Environment)

116. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if they were fully set forth herein.

117. While formally and functionally employed at SOM and GHF, Ms. Chamberlain was subjected to a sexually discriminatory work environment where Neumann, unimpeded by any other executive, regularly grabbed, groped, fondled, propositioned, kissed, and made sexually explicit comments to other female employees and to Ms. Chamberlain.

118. Because of its ubiquity, SOM and GHF executives and managers knew or should have known of Neumann's rampant sexual harassment and discrimination.

119. In October 2018, Ms. Chamberlain communicated to Senior Vice President Kevin Hoppe and CFO Kathleen De Volld (collectively, the "Executives") her concern over Neumann's sexual assault and sexual harassment. Although the Executives knew or should have known of Neumann's rampant sexual harassment and discrimination before October 2018, the Executives gained actual knowledge about Neumann's sexual harassment at that time.

120. In response, the Executives immediately began to retaliate against Ms. Chamberlain by moving Neumann, the man who had sexually assaulted her, into her office.

121. Because SOM and GHF shared an owner, operated together, and shared employees, GHF managers (collectively "Managers") also knew or should have known of Neumann's sexual assault, harassment, and discrimination against Ms. Chamberlain, and they knew or should have known of the Executives retaliation against her.

122. The Executives' and Managers' pervasive and severe behavior – both in permitting a sexually discriminatory work environment to persist and in retaliating against

Ms. Chamberlain unreasonably interfered with Ms. Chamberlain's workplace by creating an intimidating, hostile, and offensive working environment.

123. The Executives' and Managers' actions caused Ms. Chamberlain anxiety and emotional pain that made the workplace intolerable for her.

124. SOM and GHF failed to conduct a fair and thorough investigation into Ms. Chamberlain's allegations and failed to take adequate remedial measures or other action reasonably calculated to remedy what had clearly become a hostile work environment.

125. The hostile work environment persisted until the time of Ms. Chamberlain's forced resignation in October 2018.

126. Ms. Chamberlain timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

127. Ms. Chamberlain received a "right to sue" letter (the "Letter") on or after December 4, 2018 and is filing this Complaint within 90 days of receipt of that Letter.

128. By failing to address a known hostile work environment, SOM and GHF against Ms. Owens based upon her sex in violation of 42 U.S.C. § 2000e-2(a).

## SEVENTH CLAIM FOR RELIEF

### (Retaliation)

129. Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if they were fully set forth herein.

130. Ms. Chamberlain engaged in a protected activity by reporting unlawful sexual assault and harassment to the Executives in October 2018.

131. SOM took a negative employment action against Ms. Chamberlain by moving Neumann, the man who had sexually assaulted her, into her office, forcing her to resign.

132. SOM took this negative employment action in retaliation for Ms. Chamberlain making an internal complaint of sexual assault, harassment and retaliation which is a protected activity under Title VII.

133. By and through the foregoing acts and omissions, SOM retaliated against Ms. Chamberlain for opposing and reporting the sexually hostile work environment in violation of 42 U.S.C. § 2000e-3(a).

134. Ms. Chamberlain timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

135. Ms. Chamberlain received a "right to sue" letter (the "Letter") on or after December 4, 2018 and is filing this Complaint within 90 days of receipt of that Letter.

136.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Brienna Chamberlain hereby requests that the Court enter judgment against the Defendants as follows:

A. For special damages in an amount sufficient to compensate Ms. Chamberlain fully and fairly for the injuries she has sustained, including but not limited to her medical expenses and lost wages;

B. For general, consequential, special, and compensatory damages, including but not limited to her pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life;

C. For lost wages, including back pay and front pay, as permitted by federal law;

D. For nominal damages as provided for by law;

E. For prejudgment interest on all liquidated sums;

F. For punitive damages in an amount sufficient to punish defendants and deter future reprehensible conduct;

G. For attorneys' fees as provided for by law;

H.     For Ms. Chamberlain's costs and other expenses incurred in this action; and

I.      For such other and further relief as the Court deems just.

RESPECTFULLY SUBMITTED this 30th day of January, 2019.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona  85003


By:  /s/ Stephen D. Benedetto
        Stephen D. Benedetto
        Heather Hamel

*Attorneys for Plaintiff Brienna Chamberlain*

ORIGINAL of the foregoing e-filed utilizing
AZ Turbo Court, which caused a COPY to be
electronically transmitted to:

The Honorable Margaret R. Mahoney
Maricopa County Superior Court – ECB 411
101 W. Jefferson
Phoenix, AZ  85003


COPY of the foregoing sent via U.S. Mail and
electronic mail to:

Kristy Peters, Esq.
Littler Mendelson, P.C.
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, Arizona  85016-4242
KPeters@littler.com


By:  /s/ Rudy Navarrete
        *An employee of The People's Law Firm, PLC*

# EXHIBIT 3

**In the Superior Court of the State of Arizona**
**in and for the County of** Maricopa

Case Number

# CV2018-012269

Plaintiff's Attorney  Stephen D. Benedetto

Attorney Bar Number  #022349

CHRIS DEROSE, CLERK
BY
A. Valenzuela
A. VALENZUELA, FILED
18 SEP 28  PM 3:52

Is Interpreter Needed? ☐ Yes ☐ No
If yes, what language:

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Breinna Chamberlain | 645 North 4th Ave. Suite A | 602-456-1901 | benedetto@the-plf.com |

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)
James Neumann, Shout Outdoor Media, LLC, Glass Half Full, LLC

(List additional Defendants on page two and/or attach a separate sheet)

## NATURE OF ACTION

(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**
☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**
☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☒ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**
☐ 121 Physician M.D.  ☐ 123 Hospital
☐ 122 Physician D.O  ☐ 124 Other

**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☐ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
  ☐ 136 Six to Nineteen Structures
  ☐ 137 Twenty or More Structures

**150-199 OTHER CIVIL CASE TYPES:**
☐ 156 Eminent Domain/Condemnation
☐ 151 Eviction Actions (Forcible and Special Detainers)
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)

☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)
☐ 187 Real Property
☐ Special Action against Lower Courts
   (See Lower Court Appeal cover sheet in Maricopa)
☐ 194 Immigration Enforcement Challenge
   (A.R.S. §§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
   (See Lower Court Appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
   (All other tax matters must be filed in the AZ Tax
   Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute- Other
☐ 190 Declaration of Factual Innocence
   (A.R.S. §12-771)

☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain– Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute- Discrimination
☐ 185 Employment Dispute-Other
☐ 196 Verified Rule 45.2 Petition
☐ 195(a) Amendment of Marriage License
☐ 195(b) Amendment of Birth Certificate
☐ 163 Other _____
               (Specify)

## RULE 26.2 DISCOVERY TIER or AMOUNT PLEADED:

(State the amount in controversy pleaded or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.)

☒ Amount Pleaded $ 10,000,000 _____     ☐ Tier 1     ☐ Tier 2     ☐ Tier 3

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order     ☐ Provisional Remedy     ☐ OSC     ☐ Election Challenge
☐ Employer Sanction     ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the commercial Court. More information on the commercial Court, including the most recent forms, are available on the Court's website at https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

1  THE PEOPLE'S LAW FIRM, PLC
   Stephen D. Benedetto (Ariz. Bar No. 022349)
2  Heather Hamel (Ariz. Bar No. 031734)
   645 North 4th Avenue, Suite A
3  Phoenix, Arizona 85003
   Telephone: (602) 456-1901
4  Facsimile: (602) 801-2834
   benedetto@the-plf.com
5  hamel@the-plf.com

6  *Firm email for docketing purposes:*
   admin@the-plf.com
7

8  *Attorneys for Plaintiff Brienna Chamberlain*

9         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10           IN AND FOR THE COUNTY OF MARICOPA

11 

12 BRIENNA CHAMBERLAIN, a          Case No. CV2018-012269
   married woman,
13                                 **CERTIFICATE REGARDING**
                Plaintiff,          **COMPULSORY ARBITRATION**
14 
   v.
15 
   JAMES NUEMANN, a married man;
16 SHOUT OUTDOOR MEDIA, LLC, a
   Missouri limited liability company;
17 and GLASS HALF FULL, LLC, an
   Illinois limited liability company;
18 JOHN AND JANE DOES I-X; ABC
   CORPORATIONS I-X; and BLACK
19 AND WHITE PARTNERSHIPS I-X;

20              Defendants.

21        Plaintiff Brienna Chamberlain hereby certifies that she is aware of the limits of

22 compulsory arbitration under Rules 72 through 76, Ariz. R. Civ. P., and that this matter is

23 not subject to compulsory arbitration.

24 

25 

26

RESPECTFULLY SUBMITTED this 28th day of September 2018.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003

By: _____
Stephen D. Benedetto

*Attorneys for Plaintiff Brienna Chamberlain*

1    Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
2    Jordan C. Wolff (Arizona Bar #034110)
**MILLS + WOODS LAW**
3    5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
4    Telephone 480.999.4556
docket@millsandwoods.com
5    *Attorneys for Defendants*

6

7        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

           **IN AND FOR THE COUNTY OF MARICOPA**

8

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No.: CV2018-012269 |
|       Plaintiff, | **MOTION TO STRIKE PLAINTIFF'S COMPLAINT AND TO SEAL ALL STRICKEN PORTIONS** |
| vs. | **(EXPEDITED RULING REQUESTED)** |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; | **(oral argument requested)** |
| | (Assigned to the Hon. Margaret Mahoney) |
|       Defendants. | |

18        Defendants James Neumann[1], Shout Outdoor Media, LLC, and Glass Half Full, LLC by

19 and through undersigned counsel and pursuant to Ariz. R. Civ. P. 12(f) and 8(a), hereby submit

20 their Motion to Strike Plaintiff's Complaint and to Seal All Stricken Portions. The majority of the

21 paragraphs pled by Plaintiff contain allegations that are scandalous, immaterial, and impertinent

22 to the causes of action Plaintiff purports to plead and serve absolutely no proper or bona fide

23 purpose – other than to inflame readers, achieve media attention, and prejudice Defendants.

24        This Motion is supported by the following Memorandum of Points and Authorities.

25 …

26 …

27 …

28
_____
[1] Plaintiff incorrectly spells Mr. Neumann's name.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    LEGAL STANDARDS

Under Ariz. R. Civ. P. 12(f):

The court may strike from a pleading an insufficient defense or any ***redundant, immaterial, impertinent, or scandalous matter***. The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after the pleading is served.

(Emphasis Added).

Under Ariz. R. Civ. P. 8(a):

**(a) Claim for Relief.** A pleading that states a claim for relief ***must contain***:
(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a ***short and plain statement of the claim*** showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

*See Engel v. Landman*, 221 Ariz. 504, 509, ¶ 15, 212 P.3d 842, 847 (App. 2009) (citing Arizona Rule of Family Law Procedure ("ARFLP") 32(E)) *Compare with* Ariz. R. Civ. P. 12(f).

While under Rule 12(f) of the Arizona Rules of Civil Procedure, "a court may order stricken from a pleading 'any redundant, immaterial, impertinent, or scandalous matter,' such motion is not favored and should 'not be stricken from a pleading unless it is clear that it ***can have no possible relation to the subject matter of the litigation'*** and the movant ***can show he is prejudiced*** by the allegations." *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 395, 381 P.2d 107, 114 (1963) (Emphasis Added) (citing Moore's Federal Court Practice, Vol. 2 § 12.21(2), p. 2317; *Goldberg v. Amalgamated Local Union No. 355*, 202 F.Supp. 844 (D.C.E.D.N.Y. 1962); *See also Budget Dress Corp. v. International Ladies' Garment Workers' Union*, 25 F.R.D. 506 (D.C.S.D.N.Y. 1959).

The purpose of a complaint is to "give the opponent *fair notice* of the nature and basis of the claim and *indicate generally* the type of litigation involved. *Mackey v. Spangler*, 81 Ariz. 113, 115, 301 P.2d 1026, 1027-28 (1956) (emphasis added); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (recognizing that a complaint must merely provide a defendant with 'fair

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

notice of what the plaintiff's claim is and the grounds upon which it rests')." *Sorensen v. State*, 2017 WL 4654166, at *1 (Ariz.Super.).

Accordingly, "[u]nnecessary prolixity in a pleading places an unjustified burden on the [trial court] judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage." *Id.* (internal citations omitted); *see also Vicom, Inc. v. Harbridge Merchant Svcs., Inc.* 20 F.3d 771, 775-76 (7th Cir.1994) (a complaint that is prolix "makes it difficult for a defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation").

Thus, Rule 8 "emphasizes 'simplicity and brevity,' meaning that a complaint afflicted with prolixity violates that rule. *E.g., McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal for failure to comply with pleading rules (citation and internal quotation marks omitted)); *see also Meyers v. Navajo Express/Digby Refrig. Inc*, No. 08-cv-00933-BNB, 2008 WL 2358985, at 1 (D. Colo. 2008) (stating that '[p]rolix … pleadings violate the requirements of Rule 8')." *Id.[2]*

Arizona Courts permit documents to be filed under seal under Ariz. R. Civ. P. 5.4(c):

> (c) Order Permitting a Document to Be Filed Under Seal.
> (1) *Generally.* On motion, stipulation or on its own, a court may order a document to be filed under seal if this rule's requirements are met. Unless the court determines that an entire category or type of document meets this rule's requirements, a court may not enter an order that gives advance authorization to file such documents under seal.
> (2) *Requirements.* Unless a statute, rule, or prior court order authorizes a document to be filed under seal, a court may order that a document may be filed under seal only if it finds in a written order that:
> (A) an overriding interest exists that supports filing the document under seal and overcomes the right of public access to it;
> **(B) a substantial probability exists that the person seeking to file the document under seal (or another person) would be prejudiced if it is not filed under seal;**
> (C) the proposed restriction on public access to the document is no greater than necessary to preserve the confidentiality of the information subject to the overriding interest; and
> (D) no reasonable, less restrictive alternative exists to preserve the confidentiality of the information subject to the overriding interest.

(Emphasis Added).

---

[2] Rule 8(a) of the Federal Rules of Civil Procedure uses the exact same language.

## II. THE ALLEGATIONS IN THE COMPLAINT ARE SCANDALOUS, REDUNDANT, IMMATERIAL, AND IMPERTINENT

The Plaintiff has not provided short and plain statements showing the Plaintiff is entitled to relief under Ariz. R. Civ. P. 8(a). The paragraphs of Plaintiff's Complaint are full of conclusory legal theories; rambling statements meant to incense a reader of the Complaint; and are full of salacious and scandalous statements that – at most – are in there for the sole purpose of gaining media attention. Most of the Complaint is rife with unsupportable allegations; allegations related to another jurisdiction from approximately 11 years ago that have no time, place, or person in common with Plaintiff; redundant allegations; and inflammatory and scandalous allegations that have no place in a properly pled Complaint under both Arizona Rules of Civil Procedure 8 and 12(f).

### A. THE COMPLAINT SHOULD BE STRICKEN DUE TO THE MYRIAD STATEMENTS THAT VIOLATE RULE 8(a) AND 12(f)

Plaintiff's Complaint should be stricken under Rule 12(f) because many of the paragraphs contain nothing but inflammatory, irrelevant, impertinent, or editorial statements[3] that are either unsupportable, designed for nothing more than to incense a reader, or prejudice Defendants and prevent Defendants from being able to properly defend any claims. For example:

- o Paragraphs 1-6, found under Plaintiff's "Introduction" caption contain no allegations whatsoever. They only contain language opining and editorializing about the climate in the United States relating to completely irrelevant and wholly unsupportable statements relating to the claims in the Complaint. Furthermore, these paragraphs include legally conclusory statements and other statements that are impertinent, or "fluff," meant to incense a reader of the Complaint, whether it be a Judge or a member of the Jury.

- o Paragraphs 17, 19, 20, 21, and 23, 26 discuss irrelevant facts; contain language opining and editorializing; contain a citation to a case that occurred not in this

---

[3] It should be noted that Plaintiff's counsel, Stephen D. Benedetto, has touted his "storytelling" as a way to maximize settlements to Bert Martinez on a podcast entitled "Money for Lunch." Martinez calls Benedetto a "A Settlement Specialist" and states that Benedetto "Leverages the power of storytelling to maximize settlements."
http://www.blogtalkradio.com/moneyforlunch/2016/09/20/joan-robison-stephen-benedetto

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

jurisdiction and having nothing to do with any party in this matter; include clear hearsay that is unsupportable; include inflammatory statements with legal conclusions; or, include conclusory stories about Plaintiff's perception of the current climate in the United States.

o Paragraphs 33-36 include inflammatory statements meant to incense a reader of the Complaint, whether it be a Judge or a member of the Jury.

o Paragraphs 42-46 include inflammatory statements meant to incense a reader of the Complaint, whether it be a Judge or a member of the Jury.

o Paragraphs 48, 54, 58, 60, 64-67, 70, and 73-75 contain allegations that are irrelevant, impertinent, inflammatory, contain language opining and editorializing, language that is clearly hearsay, or provide legal conclusions with no support and are meant to incense a reader of the Complaint, whether it be a Judge or a member of the Jury.

o Paragraphs 81-82, and 84-86 contain allegations that are irrelevant, impertinent, inflammatory, or provide legal conclusions with no support and are meant to incense a reader of the Complaint, whether it be a Judge or a member of the Jury.

o Paragraphs 89, 95-97, 101-108, and 117-118 contain allegations that are irrelevant, impertinent, inflammatory, or provide legal conclusions with no support and are meant to incense a reader of the Complaint, whether it be a Judge or a member of the Jury.

None of those allegations, "whether true or not, have any bearing on whether the Plaintiff can state a claim for relief." *Sorensen v. State*, 2017 WL 4654166, at *3 (Ariz.Super.) (citing *E.g., Opperman v. Path, Inc.*, No. A-12-CA-219-SS, 2012 WL 4105189, at *1 (W.D. Tex. Aug. 23, 2012) (concluding that complaint was "deficient," in part because it was "laced with … irrelevant and inappropriate editorializing"); *Rodriguez v. County of Los Angeles*, No. CV 07-2644 ABC (CTx), 2008 WL 8894684, at *1 (C.D. Cal. May 19, 2008) ("[U]nder [Rule] 8(a), a complaint is to be 'a short and plain statement of the claim showing that the pleader is entitled to relief,' not a prolix and byzantine diatribe whose legally cognizable allegations are obscured in a muddy

5

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

torrent of invective, irrelevant minutia, and counsel's editorializing").). As such, "they have no place in the complaint."*Id.*

As discussed herein, many of the allegations – at minimum fifty-two (52) – in the Complaint contain scandalous, redundant, immaterial, and impertinent statements. Furthermore, many include pure editorialization and are full of legally conclusory statements that do not set forth a factual basis for any of the claims. The "allegations" are a prolix and byzantine diatribe whose potentially legally cognizable allegations are completely obscured in a muddy torrent of invective, inflammatory, impertinent, irrelevant minutia, and contain counsel's editorializing. *See Rodriguez v. County of Los Angeles*, CV 07-2644 ABC CTX, 2008 WL 8894684, at *1 (C.D. Cal. May 19, 2008)

As Plaintiff has identified, Defendant James Neumann is a successful businessman and has a reputation of an upstanding businessman in his community. These scandalous, inflammatory, impertinent, irrelevant, and editorializations by counsel will severely prejudice Defendants in this case and this community – especially if, as is assumed, the original complaint is sent to the media.[4]

Accordingly, Plaintiff's complaint should be stricken, or in the alternative, the paragraphs identified by Defendants should be stricken to remove the parts prohibited under both Rule 8(a) and 12(f) of the Arizona Rules of Civil Procedure.

**B.** **ALL PARAGRAPHS IDENTIFIED BY DEFENDANTS SHOULD BE IMMEDIATELY SEALED**

There exists an overriding interest that supports filing any stricken section under seal and overcomes the right of public access to it. As many of the allegations in the Complaint are designed solely to incense the reader, the right of public access is outweighed due to the extreme prejudice that Defendants would face if these statements are not sealed. The proposed restriction by Defendants is such that the fifty-two (52) paragraphs identified be put under seal. There is no other

---

[4] All of Plaintiff's allegations boil down to an alleged incident that occurred in Las Vegas. The businesses involved in these allegations will suffer prejudice simply by being named in a lawsuit that alleges an employee committed what has been described by Plaintiff as purported criminal conduct. Yet, the alleged conduct did not happen at a place of employment or at an establishment operated by either company. SOM and GHF would have no expectation that this kind of claim would ever be asserted against them.

6

1    reasonable or less restrictive alternative that exists as this document has now been filed publicly

2    for the last nearly two weeks.

3    **C.**    **IN THE ALTERNATIVE, THE ENTIRE COMPLAINT SHOULD BE SEALED**

4

5    If this Court finds that sealing specific paragraphs is too cumbersome or burdensome,

     Defendants request in the alternative that the entire Complaint be filed under seal and future

6

     statements or amendments that would violate either Rule 8(a) or 12(f) of the Arizona Rules of

7

     Civil Procedure be also filed under seal.

8

9    **III.    CONCLUSION**

10   For the foregoing reasons, Defendants request that this Court strike Plaintiff's pleading in

     its entirety. In the alternative, Defendants request that this Court strike the identified fifty-two (52)

11

     paragraphs from the Complaint. Furthemore, Defendants request that the identified fifty-two (52)

12

     paragraphs be sealed from the public, or in the alternative, the entire Complaint be sealed from the

13

     public.

14

15

16   **RESPECTFULLY SUBMITTED** this 12th day of October 2018.

17   **MILLS + WOODS LAW, PLLC**

18

19   By_____/s/ Sean A. Woods_____
            Robert T. Mills

20          Sean A. Woods
            Jordan C. Wolff

21          5055 N 12th Street, Suite 101
            Phoenix, AZ 85014

22          *Attorneys for Defendants/Counterclaimants*

23

24

25

26

27

28

7

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

**ORIGINAL** E-Filed on this 12th day of October 2018, with the Clerk of the Maricopa County Superior Court

**COPY** of the foregoing e-served this 12th day of October 2018, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Firm email for docketing purposes:*
admin@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

_____/s/ Jordan C. Wolff_____

1  Robert T. Mills (Arizona Bar #018853)
   Sean A. Woods (Arizona Bar #028930)
2  Jordan C. Wolff (Arizona Bar #034110)
3  **MILLS + WOODS LAW**
   5055 North 12th Street, Suite 101
4  Phoenix, Arizona 85014
   Telephone 480.999.4556
5  docket@millsandwoods.com
   *Attorneys for Defendants*
6

7              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8                  **IN AND FOR THE COUNTY OF MARICOPA**

9

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No.: CV2018-012269 |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| vs. | |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; | (Assigned to the Hon. Margaret Mahoney) |
| Defendants. | |

20      NOTICE IS HEREBY GIVEN that Robert T. Mills, Sean A. Woods, and Jordan C. Wolff

21  of Mills + Woods Law, PLLC hereby enter their appearance on behalf of Defendants James

22  Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC for all further proceedings in

23  this case, including the filing of a Notice of Appeal, if required. Please send all documents

24  regarding this matter to:

25                          Sean A. Woods
                         swoods@millsandwoods.com
26                          Robert T. Mills
27                         rmills@millsandwoods.com
                          Jordan C. Wolff
28

jwolff@millsandwoods.com

Mills + Woods Law, PLLC

5055 North 12th Street, Suite 101

Phoenix, Arizona 85014

480.999.4556

docket@millsandwoods.com

**RESPECTFULLY SUBMITTED** this 12th day of October 2018.

**MILLS + WOODS LAW, PLLC**

By____/s/ Sean A. Woods_____
       Robert T. Mills
       Sean A. Woods
       Jordan C. Wolff
       5055 N 12th Street, Suite 101
       Phoenix, AZ 85014
       *Attorneys for Defendants*

**ORIGINAL** E-Filed on this 12th day of October 2018,
with the Clerk of the Maricopa County Superior Court

**COPY** of the foregoing e-served this 12th day
of October 2018, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Firm email for docketing purposes:*
admin@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*


_____/s/ Jordan C. Wolff_____



1   THE PEOPLE'S LAW FIRM, PLC
     Stephen D. Benedetto (Ariz. Bar No. 022349)
2   Heather Hamel (Ariz. Bar No. 031734)
     645 North 4th Avenue, Suite A
3   Phoenix, Arizona 85003
     Telephone: (602) 456-1901
4   Facsimile: (602) 801-2834
     benedetto@the-plf.com
5   hamel@the-plf.com

6   *Firm email for docketing purposes:*
     admin@the-plf.com
7

8

     *Attorneys for Plaintiff Brienna Chamberlain*
9          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10          IN AND FOR THE COUNTY OF MARICOPA

11
     |  |  |
     | --- | --- |
     | BRIENNA CHAMBERLAIN, a married woman, | Case No. **CV**2018-012269 |
     | Plaintiff, | **SUMMONS** |
     | v. |  |
     | JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; |  |
     | Defendants. |  |

12
13
14
15
16
17
18
19
20

*If you would like legal advice from a lawyer, contact the Lawyer Referral Service at 602-257-4434 or www.maricopalawyers.org Sponsored by the Maricopa County Bar Association*

21          THE STATE OF ARIZONA TO THE DEFENDANT:

22   Glass Half Full, LLC
23   Statutory Agent: James Neumann
     15407 E Crested Butte Trail,
24   Fountain Hills, AZ 85268

25

26

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this court. If served within Arizona, you must appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona, whether by direct service, by registered or certified mail, or by publication, you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until the expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of receipt by the party being served. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. Ariz. R. Civ. P. 4, 4.1, 4.2 and 12(a).

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiff's attorney. Ariz. R. Civ. P. 5, 10; A.R.S. § 12-311.

Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least three (3) judicial days in advance of a scheduled court proceeding. Ariz. R. Civ. P. 4(b).

The name and address of plaintiffs' attorneys is:

Stephen D. Benedetto
THE PEOPLE'S LAW FIRM, PLC
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003

SIGNED AND SEALED this date: SEP 2 8 2018

CHRIS DEROSE, CLERK

By_____

A. Valenzuela
Deputy Clerk

- 2 -

Doc. # DC-11921432 v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### ADA Notification

Requests for reasonable accommodation for persons with disabilities must be made to the Maricopa County Superior Court by the parties at least ~~five (5)~~ *three* business days in advance of a scheduled court proceeding. ADA information and the request for are also available on our web site under Forms/Miscellaneous Forms.

### Interpreter Notification

Requests for an interpreter for persons with limited English proficiency must be made to Maricopa County Superior Court Administration by the parties at least ten (10) judicial days in advance of a scheduled court proceeding.

| | |
|---|---|
| *Attorney or Party without Attorney:* | *For Court Use Only* |

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>THE PEOPLE'S LAW FIRM<br>Stephen D. Benedetto (022349)<br>645 NORTH FOURTH AVENUE SUITE A<br>PHOENIX, AZ 85003<br>*Telephone No:* (602) 456-1901 | *For Court Use Only*<br>CHRIS DEROSE, CLERK<br>RECEIVED CCB #1<br>DOCUMENT DEPOSITORY<br><br>18 OCT 17 PM 4: 53<br><br>FILED BY A. PLASCEN' |
| *Attorney For:* Plaintiff       *Ref. No. or File No.:* CV2018-012269 | |

| | |
|---|---|
| *Insert name of Court, and Judicial District and Branch Court:*<br>MARICOPA COUNTY SUPERIOR COURT | |
| *Plaintiff:* BRIENNA CHAMBERLAIN, a married woman,<br>*Defendant:* JAMES NUEMANN, a married man; ET AL | |

| AFFIDAVIT OF SERVICE | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>CV2018-012269 |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   (2) SUMMONS; (2) COMPLAINT; (2) CERTIFICATE REGARDING COMPULSORY ARBITRATION; $25.00 ACCEPTANCE FEE

3.   *a.  Party served:*   GLASS HALF FULL, LLC
     *b.  Person served:*  Joana Benitez, Customer Service Representative 1 for Arizona Corporation Commission

4. *Address where the party was served:*  1300 W Washington St, Phoenix, AZ 85007

5. *I served the party:*
   a. **by substituted service.**  On: Wed, Oct 17 2018 at: 08:45 AM by leaving the copies with or in the presence of:
   Joana Benitez, Customer Service Representative 1 for Arizona Corporation Commission, Hispanic , Female , Age: 30 ,
   Hair: Brown , Eyes: Brown , Height: 5'4".

   *(a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.*
   *(b) I received this summons for service on: Tue, October 16, 2018*

   Service: $53.21, Mileage: $24.00, Affidavit: $10.00, Wait: $0.00, Fees Advanced: $27.50, Total: $114.61

   I Declare under penalty of perjury under the laws of the State of
   Arizona that the foregoing is true and correct.

6. *Person Executing:*
   *a.* Christine Boyd MC-8476;
   **b. FIRST LEGAL**
     3737 North 7th. Street Suite 209
     PHOENIX, AZ 85014
   c. (602) 248-9700

| 10/17/2018 | *Clitin M. Boyd* |
|---|---|
| *(Date)* | *(Signature)* |

7. STATE OF ARIZONA, COUNTY OF
   Subscribed and sworn to (or affirmed) before on this ___17th___ day of ___October___, _2018_ by Christine Boyd (MC-8476)
   proved to me on the basis of satisfactory evidence to be the person who appeared before me.

   *Jennifer N. Aymong*
   **(Notary Signature)**

**AFFIDAVIT OF SERVICE**

JENNIFER N AYMONG<br>
Notary Public · Arizona<br>
Maricopa County<br>
Commission # 548129<br>
My Comm. Expires Jul 1, 2022

2732176 (10333032)

**FL**
FIRSTLEGAL





CHRIS DeROSE, CLERK
RECEIVED CCB #1
DOCUMENT DEPOSITORY

18 OCT 17 PM 4: 53

FILED BY A. PLASCENCIA

1
THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
2
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
3
Phoenix, Arizona 85003
Telephone: (602) 456-1901
4
Facsimile: (602) 801-2834
benedetto@the-plf.com
5
hamel@the-plf.com

6
*Firm email for docketing purposes:*
admin@the-plf.com
7

8
*Attorneys for Plaintiff Brienna Chamberlain*
9
IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
10
IN AND FOR THE COUNTY OF MARICOPA
11

| | |
|---|---|
| 12 BRIENNA CHAMBERLAIN, a married woman, | Case No. CV2018-012269 |
| 13 Plaintiff, | **SUMMONS** |
| 14 v. | If you would like legal advice from a lawyer, contact the Lawyer Referral Service at 602-257-4434 |
| 15 JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a | or |
| 16 Missouri limited liability company; and GLASS HALF FULL, LLC, an | www.maricopalawyers.org |
| 17 Illinois limited liability company; JOHN AND JANE DOES I-X; ABC | Sponsored by the Maricopa County Bar Association |
| 18 CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; | |
| 19 Defendants. | |
| 20 | |

21
THE STATE OF ARIZONA TO THE DEFENDANT:
22
Shout Outdoor Media, LLC,
23
Statutory Agent: Daniel Gleason
6991 E Camelback Rd. Suite D-300
24
Scottsdale, AZ 85251
25
26

1    YOU ARE HEREBY SUMMONED and required to appear and defend, within the time
     applicable, in this action in this court. If served within Arizona, you must appear and defend
2    within 20 days after the service of the Summons and Complaint upon you, exclusive of the
     day of service. If served out of the State of Arizona, whether by direct service, by registered
3    or certified mail, or by publication, you shall appear and defend within 30 days after the
     service of the Summons and Complaint upon you is complete, exclusive of the day of
4    service. Where process is served upon the Arizona Director of Insurance as an insurer's
     attorney to receive service of legal process against it in this state, the insurer shall not be
5    required to appear, answer or plead until the expiration of 40 days after date of such service
     upon the Director. Service by registered or certified mail without the State of Arizona is
6    complete 30 days after the date of receipt by the party being served. Service by publication
     is complete 30 days after the date of first publication. Direct service is complete when
7    made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after
     filing the Affidavit of Compliance and return receipt or Officer's Return. Ariz. R. Civ. P.
8    4, 4.1, 4.2 and 12(a).

9        YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend
     within the time applicable, judgment by default may be rendered against you for the relief
10   demanded in the Complaint.

11       YOU ARE CAUTIONED that in order to appear and defend, you must file an
     Answer or proper response in writing with the Clerk of this Court, accompanied by the
12   necessary filing fee, within the time required, and you are required to serve a copy of any
     Answer or response upon the plaintiff's attorney. Ariz. R. Civ. P. 5, 10; A.R.S. § 12-311.
13
         Requests for reasonable accommodation for persons with disabilities must be made
14   to the division assigned to the case by parties at least three (3) judicial days in advance of a
     scheduled court proceeding. Ariz. R. Civ. P. 4(b).
15
         The name and address of plaintiffs' attorneys is:
16
                    Stephen D. Benedetto
17                  THE PEOPLE'S LAW FIRM, PLC
                    645 North 4th Avenue, Suite A
18                  Phoenix, Arizona 85003

19                                    SEP 2 8 2018
20   SIGNED AND SEALED this date: ___CHRIS DEROSE, CLERK_____

21

22
                                 By_____
23

24                                                  

25              A. Valenzuela
                Deputy Clerk
26

                                - 2 -

1

## ADA Notification
Requests for reasonable accommodation for persons with disabilities must be made
2   to the Maricopa County Superior Court by the parties at least ~~five~~ (5) business
days in advance of a scheduled court proceeding. ADA information and the
3   request for are also available on our web site under Forms/Miscellaneous Forms.

4

5

## Interpreter Notification
Requests for an interpreter for persons with limited English proficiency must be
6   made to Maricopa County Superior Court Administration by the parties at least
7   ten (10) judicial days in advance of a scheduled court proceeding.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Doc. # DC-11921432 v.1

| Attorney or Party without Attorney:<br>THE PEOPLE'S LAW FIRM<br>Stephen D. Benedetto (022349)<br>645 NORTH FOURTH AVENUE SUITE A<br>PHOENIX , AZ 85003<br>*Telephone No:* (602) 456-1901 | For Court Use Only<br>CHRIS DEROSE, CLERK<br>RECEIVED CCB #1<br>DOCUMENT DEPOSITORY<br><br>18 OCT 17 PM 4: 53<br><br>FILED BY: _____ Patterson |
|---|---|
| *Attorney For:* Plaintiff     *Ref. No. or File No.:* CV2018-012269 | |

| Insert name of Court, and Judicial District and Branch Court:<br>MARICOPA COUNTY SUPERIOR COURT |
|---|

| *Plaintiff:* BRIENNA CHAMBERLAIN, a married woman,<br>*Defendant:* JAMES NUEMANN, a married man; ET AL |
|---|

| **AFFIDAVIT OF SERVICE** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>CV2018-012269 |
|---|---|---|---|---|

1.  *At the time of service I was at least 21 years of age and not a party to this action.*

2.  I served copies of the
    (2) SUMMONS; (2) COMPLAINT; (2) CERTIFICATE REGARDING COMPULSORY ARBITRATION; $25.00 ACCEPTANCE FEE

3.  a.  *Party served:*    Shout Outdoor Media, LLC,
    b.  *Person served:*    Joana Benitez, Customer Service Representative 1 for Arizona Corporation Commission

4.  *Address where the party was served:*    1300 W Washington St, Phoenix, AZ 85007

5.  *I served the party:*
    a. **by substituted service.**   On: Wed, Oct 17 2018 at: 08:43 AM by leaving the copies with or in the presence of:
           Joana Benitez, Customer Service Representative 1 for Arizona Corporation Commission , Hispanic , Female , Age: 30 ,
           Hair: Brown , Eyes: Brown , Height: 5'4".

    (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.
    *(b) I received this summons for service on:* Tue, October 16, 2018

     Service: $30.00, Mileage: $0.00, Affidavit: $10.00, Wait: $0.00, Fees Advanced: $27.50, Total: $67.50

                                         I Declare under penalty of perjury under the laws of the State of
                                         Arizona that the foregoing is true and correct.

6.  *Person Executing:*
    a. Christine Boyd MC-8476;
    b. **FIRST LEGAL**
        3737 North 7th. Street Suite 209
        PHOENIX, AZ 85014
    c. (602) 248-9700

                          ___10/17/2018___         *Christine M. Boyd*
                               *(Date)*                            *(Signature)*

7.  *STATE OF ARIZONA, COUNTY OF*
    *Subscribed and sworn to (or affirmed) before on this* ___17th___ *day of* _October_ , *2018 by Christine Boyd (MC-8476)*
    *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

                                        *Jennifer N. Aymong*
**AFFIDAVIT OF SERVICE**                           *(Notary Signature)*

> JENNIFER N AYMONG
> Notary Public - Arizona
> Maricopa County
> Commission # 548129
> My Comm. Expires Jul 1, 2022

                                                     732173 (10333033)


FIRSTLEGAL

1    THE PEOPLE'S LAW FIRM, PLC
      Stephen D. Benedetto (Ariz. Bar No. 022349)
2    Heather Hamel (Ariz. Bar No. 031734)
      645 North 4th Avenue, Suite A
3    Phoenix, Arizona 85003
      Telephone: (602) 456-1901
4    Facsimile: (602) 801-2834
      benedetto@the-plf.com
5    hamel@the-plf.com

6    *Attorneys for Plaintiff Brienna Chamberlain*

7         IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

8          IN AND FOR THE COUNTY OF MARICOPA

9

10    BRIENNA CHAMBERLAIN, a       Case No. CV2018-012269
      married woman,

11            Plaintiff,

12    v.                     **RESPONSE TO DEFENDANT'S
                              MOTION TO STRIKE AND SEAL ALL
13    JAMES NUEMANN, a married man;    STRICKEN PORTIONS**
      SHOUT OUTDOOR MEDIA, LLC, a
14    Missouri limited liability company;
      and GLASS HALF FULL, LLC, an
15    Illinois limited liability company;    (Assigned to the Honorable Margaret
      JOHN AND JANE DOES I-X; ABC    Mahoney)
16    CORPORATIONS I-X; and BLACK
      AND WHITE PARTNERSHIPS I-X;
17

18            Defendants.

19         Plaintiff Brienna Chamberlain, through undersigned counsel, hereby responds to

20    Defendants' Motion to Strike and Seal All Stricken Portions (hereinafter, the "Motion to

21    Strike and Seal"), and respectfully urges the Court to deny that request. Striking and sealing

22    52 separate paragraphs from the Complaint – paragraphs that contain allegations that are

23    relevant, material, and pertinent to Ms. Chamberlain's claims – would constitute a clear

24    abuse of the Court's limited authority under Rule 12(f). The following Memorandum of

25    Points and Authorities will make clear exactly why Defendants' request is improper and

26    must be denied.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Overview**

On September 28, 2018, Plaintiff Brienna Chamberlain filed a Complaint against the Defendants:  James Neumann and his two companies that employed her, Shout Outdoor Media, LLC and Glass Half Full, LLC.  The Complaint sought compensatory and punitive damages arising out of legal claims for assault and battery, negligence, negligence per se, intentional infliction of emotional distress, and invasion of privacy.   Specifically, Ms. Chamberlain alleged that, while she was employed by Neumann, he regularly sexually harassed her and other employees on the job; he invited her on a business trip to Las Vegas, where brought her to a strip club after claiming to have lost the address where they were supposed to go for the business trip; he consumed alcohol with her until she became severely intoxicated; and he then carried her back to his hotel room where he removed her clothes, sexually assaulted her, and photographed her partially-naked body.

Plaintiff served her Complaint shortly after filing.

Defendants now respond to the Complaint by asking the Court to strike-and-seal 52 of the 120 numbered paragraphs in the Complaint.  They contend that the Court has the discretion under Ariz. R. Civ. P. 12(f) to strike-and-seal these allegations as exceed the "notice    pleading"    standards    of    the    rules    of    civil    procedure, "inflammatory," and "prejudicial" to Defendants.

/ / /

## II.   Issue Presented

The allegations set forth in the Complaint are, by their very nature, inflammatory. There is no escaping that reality. Such is the nature of any claim in which someone is accused of these types of acts. Whether the allegations in the Complaint are "inflammatory" is not the issue this Court must resolve. Rather, the issue posed by Defendant's Motion is a bit different, namely:

> **Where a plaintiff alleges claims of sexual assault, invasion of privacy, and intentional infliction of emotional distress arising out of a series of sexually abusive acts, does Rule 12(f) permit the Court to strike-and-seal those allegations as "scandalous" or "prejudicial" to the defendant?**

Per application of the plain meaning of the Rules of Civil Procedure, the answer to this question is an unequivocal "No."


## III.   Legal Argument

A simple two-part analysis resolves Defendants' request that the Court strike-and-seal the 52 contested paragraphs: (1) Under the Arizona Rules of Civil Procedure, a court's discretion on a motion to strike is limited to redundant, immaterial, impertinent, or scandalous matters; and (2) None of these descriptors apply to any of the paragraphs cited in the Complaint.

### A.   The Court's discretion on a Motion to Strike is limited.

Motions to strike are governed exclusively[1] by Rule 12(f), Ariz. R. Civ. P. Like all rules of procedure, Rule 12(f) must be interpreted according to its "plain meaning."[2] And the plain meaning of the Rule dictates the limited circumstances under which a trial court

---

[1] The Motion's citation to Rule 8 notwithstanding, that rule has no bearing on a motion to strike. It establishes only the minimum information a complaint must contain. Nothing in the rule's language, or the case law interpreting it, permits a court to strike information merely because it exceeds those minimum requirements. To that end, while Defendants are correct that Rule 8 requires a "short and plain statement of the claim," that Rule has no bearing on the Court's authority to strike language from a complaint.

[2] *Ariz. Dep't of Revenue v. Superior Court*, 189 Ariz. 49, 52, 938 P.2d 98, 101 (App. 1997).

has discretion to strike information from a pleading:

> **The court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.**

Equally important as the words used are those not:  By specifying the exact types of material that a trial court has the discretion to strike, Rule 12(f) effectively defines the material the court lacks the discretion to strike:  everything else.[3]  Per the express language of Rule 12(f), therefore, the Court <u>only</u> has the discretion to strike from the Complaint information that is "redundant," "immaterial," "impertinent," or "scandalous."[4]

**B.**     <u>None of these descriptors applies to any of the 52 contested paragraphs.</u>

Defendants' Motion specifically takes issue with 52 paragraphs in Plaintiff's Complaint (the "contested paragraphs").  Each of these contested paragraphs deals with one of the following issues:  Mr. Neumann's significant business background; Ms. Chamberlain's minimal professional experience; the environment of sexual harassment Mr. Neumann created in Ms. Chamberlain's workplace; Mr. Neumann's history of sexually harassing and abusing Ms. Chamberlain; Mr. Neumann's history of sexually harassing and abusing other female employees; and the specific details surrounding Mr. Neumann's October 2, 2016 sexual assault of Ms. Chamberlain in a Las Vegas hotel room.

<u>None of these allegations are redundant</u>.  As evident from the face of the Complaint itself, each numbered paragraph sets forth new facts, containing novel pieces of information.

<u>None of these allegations are "immaterial" or "impertinent."</u>  Each of these allegations speaks directly to one of the following material issues:  the disparate power

---

[3] *State v. Clabourne*, 142 Ariz. 335, 347, 690 P.2d 54, 66 (App. 1977) (use of the word "may" in a procedural rule imbues trial court with discretion to act).

[4] *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) ("Our interpretation of the Federal Rules of Civil Procedure begins with the relevant rule's 'plain meaning.' Thus, we begin our analysis by determining whether [the contested portion of the complaint was: (1) an insufficient defense; (2) redundant;  [*974]  (3) immaterial; (4) impertinent; or (5) scandalous." *Haroutunian v. Valeuoptions, Inc.*, 218 Ariz. 541, 548, ¶ 8, 189 P.3d 1114, 1121 (App. 2008) ("It is appropriate to look to federal courts' interpretations of federal rules that mirror Arizona rules.")

- 4 -

dynamics between a powerful business owner and a young woman making $30,000 in her first real job; the pattern of harassment and abuse of that young woman and her female co-workers in the workplace by that same business owner; and the sexual assault and illicit photographing on the young woman while she was severely intoxicated and partially conscious. Such allegations are unquestionably material and pertinent to Ms. Chamberlain's claim for intentional infliction of emotional distress, of which "extreme and outrageous conduct" is a material element.[5]

<u>None of the allegations are scandalous</u>. Finally, a review of the law makes clear that none of these matters are "scandalous" for the purposes of Rule 12(f). Though this might not be obvious on first blush, given the modern overuse of the term "scandalous," that term has a different meaning in the law. Legally, a matter is only scandalous if it is "both grossly disgraceful (or defamatory) and irrelevant to the action or defense."[6] Accordingly, Rule 12(f) permits statements to be stricken as scandalous only when they "unnecessarily reflect [] on the moral character of an individual or state [] anything in repulsive language that detracts from the dignity of the court."[7] These allegations contain no repulsive language. They are not irrelevant to the action. And while they certainly reflect on Mr. Neumann's moral character, such is inherent in the very nature of the conduct alleged.

Indeed, on the issue of Rule 12(f) grounds, the specific language employed by Defendants' own Motion is telling. At pages 4 and 5 of the Motion, Defendants identify

---

[5] *Cf. Forsman v. Chi. Title Ins. Co.*, 2006 WL 4682253 (D. Ariz.) at *12-13 (unpublished) ("Chicago Title moves to strike  paragraphs 16 through 26 from Forsman's First Amended Complaint, arguing that the allegations that relate to Michaud's sexual harassment are immaterial, impertinent, and scandalous. We disagree. The paragraphs are material and pertinent to Forsman's claim for the intentional infliction of emotional distress because they describe the harassment which Forsman alleges that she endured, which she conveyed to her supervisor, and which her supervisor failed to take steps to remedy.  Statements may be stricken as scandalous when they "unnecessarily reflect [] on the moral character of an individual or state [] anything in repulsive language that detracts from the dignity of the court." 2 James Wm. Moore et al., Moore's Federal Practice§ 12.37 [3]. *The statements are relevant and while repulsive, are necessary to support a claim of outrage*. Accordingly, Chicago Title's motion to strike is denied." (emphasis added.)).

[6] *Black's Law Dictionary* (7th ed. 1999) at 1345.

[7] 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.37

- 5 -

the specific paragraphs with which they take issue. Creating seven groupings of allegedly objectionable allegations, they alternately label the contested paragraphs as "inflammatory," "editorializing," "hearsay," "unsupportable," "fluff," "legal conclusions" and are "meant to incense the reader." Such criticisms, though emotionally loaded, are legally meaningless. None of them is a basis for striking language under Rule 12(f). And, through nearly seven paragraphs of specific criticisms, Defendants label an allegation in the complaint "impertinent" only four times. They never once argue that any accusation "redundant," "immaterial, or "scandalous."

Defendants' omissions do not appear to be accidental. Simply, no reasonable argument can be made that the contested paragraphs of redundant, immaterial, impertinent, or scandalous.

## IV. <u>Conclusion</u>

This is not a mere matter of the Court having to decide whether the information in the complaint is inflammatory or potentially prejudicial to Defendants. Rather, Arizona law is clear that Defendants' burden here is far heavier. To prevail on its Motion, Defendants "must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants."[8] Even if Defendants' could make such a showing (which they clearly cannot), denial would *still* be within the sound discretion of the court.[9] And these motions are justifiably disfavored: As our courts have noted, absent "extraordinary circumstances," such motions are "usually a waste of time of the court and the resources of the parties."[10]

---

[8] 2-12 Moore's Federal Practice, Civil § 12.37.
[9] *Palmer v. Howell*, 2012 WL 642882 (D. Ariz.) at *8 (unpublished) ("Although the granting of a motion to strike often may be reversible error, the denial of a motion to strike is wholly within the sound discretion of the trial court.")
[10] *Sitton v. Deutsche Bank Nat'l Trust Co.*, 233 Ariz. 215, 220, ¶ 5, 311 P.3d 237, 242 (App. 2013).

This daunting case law notwithstanding, it is not impossible to imagine the type of "extraordinary circumstances" in which Defendants' Motion to Strike and Seal would be appropriate – if, for example, the 52 contested paragraphs were included in a complaint in which Defendants were being sued by their landlord for breach of a lease agreement. Or if they were contained in a complaint in which Defendants were being sued by an adverse driver for a car accident they caused. Or in a claim by an employee arising out of a failure to promptly pay wages. Under any of those circumstances, there is little question that allegations about Mr. Neumann's sexual harassment, sexual abuse, and sexual assault of Ms. Chamberlain and others would be immaterial, impertinent, and scandalous to the subject matter. And under any of those circumstances, Defendants' anger would be well-founded, their accusations against the Complaint's author rational, and their request that the Court strike such language grounded in the law.

But this is not a case for breach of contract, or a car crash, or unpaid wages.

It is claim for compensatory and punitive damages arising out of the sexual assault and battery commissioned on a young woman by her boss in a Las Vegas Hotel room; for the invasion of her privacy that occurred when her employer took photos of her while she was unconscious and half-naked; for intentional infliction of emotional distress arising out of a lengthy term of sexual harassment and abuse in the workplace leading up to the Las Vegas trip; and for punitive damages to punish a convicted sexual assailant who has engaged in a series of acts that inform directly on his mental state.

Each and every one of the contested paragraphs are limited to allegations that are material and pertinent to the subject matter of the lawsuit. None of these allegations are redundant; none are scandalous within the meaning of Rule 12(f). They are all asserted in good-faith, based on Plaintiff's personal knowledge. And any "prejudice" running to Defendants is of the exact same quality and nature necessarily flows to any parties accused of conduct like this.

Defendants' Motion to Strike and Seal is simply unsupported by Arizona law and Plaintiff respectfully requests that the Court deny that Motion and require Defendants to Answer the Complaint.

RESPECTFULLY SUBMITTED this 31st day of October, 2018.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003

By: /s/ Stephen D. Benedetto
Stephen D. Benedetto
Heather Hamel

*Attorneys for Plaintiff Brienna Chamberlain*

ORIGINAL of the foregoing e-filed
this 31st day of October, 2018 utilizing
AZ Turbo Court, which caused a COPY
of the foregoing to be electronically
transmitted to:

The Honorable Margaret Mahoney
Maricopa County Superior Court – ECB 411
101 W. Jefferson
Phoenix, AZ 85003

COPY of the foregoing e-served this
same date utilizing AZ Turbo Court on:

Robert T. Mills, Esq.
Sean A. Woods, Esq.
Jordan C. Wolff, Esq.
MILLS + WOODS LAW
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014

By: /s/ Rudy Navarrete
Rudy Navarrete

*An employee of The People's Law Firm, PLC*

- 8 -

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:   602.474.3600
   Facsimile:   602.957.1801
6
7  Robert T. Mills, Esq.
   Sean A. Woods, Esq.
   Jordan C. Wolff, Esq.
8  MILLS + WOODS LAW, PLLC
   5055 North 12th Street, Suite 101
9  Phoenix, Arizona 85014
10 Attorneys for Defendants
11
12            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
13               IN AND FOR THE COUNTY OF MARICOPA
14
15 BRIENNA CHAMBERLAIN, a              Case No. CV2018-012269
   married woman,
16                                     **EX PARTE APPLICATION FOR
           Plaintiff,                  SUBSTITUTION OF COUNSEL
17                                     OF RECORD**
   v.
18                                     **(With Client Consent)**
   JAMES NUEMANN, a married man;
19 SHOUT OUTDOOR MEDIA, LLC, a         (Assigned to Hon. Margaret Mahoney)
   Missouri limited liability company;
20 and GLASS HALF FULL, LLC, an
   Illinois limited liability company;
21 JOHN AND JANE DOES I-X; ABC
   CORPORATIONS I-X; and BLACK
22 AND WHITE PARTNERSHIPS I-X,
23        Defendants.
24
25
26      Littler Mendelson, P.C., acting on behalf of Defendants James Nuemann, Shout
27 Outdoor Media, LLC, and Glass Half Full, LLC, (collectively "Defendants"), and pursuant
28 to Rule 5.3(a)(2)(B) of the Arizona Rules of Civil Procedure, hereby applies for an order

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

allowing the substitution of attorney Kristy L. Peters and Peter Prynkiewicz of Littler Mendelson, P.C., for and in place of Robert T. Mills, Sean A. Woods, and Jordan C. Wolff of Mills + Woods Law, PLLC, as counsel of record for Defendants James Nuemann, Shout Outdoor Media, LLC, and Glass Half Full, LLC.

This substitution is based on the request of the Defendants. Littler Mendelson has been advised of the dates pending before the Court.

By signing below, Mills + Woods, PLLC, Littler Mendelson, P.C., and the Defendants James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC, accept this substitution.

DATED this __12th__ day of November, 2018.


MILLS + WOODS LAW, PLLC                    LITTLER MENDELSON, P.C.


  s/ Sean A. Woods                          s/ Kristy L. Peters
_____               _____
Robert T. Mills                           Kristy L. Peters
Sean A. Woods                             Peter C. Prynkiewicz
Jordan C. Wolff                           Substitute Counsel for Defendants
Attorneys for Defendants


SHOUT OUTDOOR MEDIA, LLC                   GLASS HALF FULL, LLC

By _____            By _____

    Defendant                                 Defendant




_____
James Neumann
Defendant



ORIGINAL e-filed and COPY served via
AZ Turbocourt this __12th__ day of
November, 2018, to:

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

The Honorable Margaret Mahoney
Maricopa County Superior Court Judge

COPY mailed and/or emailed this __12__ day
of November, 2018, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

s/ Linda Bullis

FIRMWIDE:159991991.1 999999.2912

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:  602.474.3600
   Facsimile:  602.957.1801
6
7  Attorneys for Defendants

8
              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
9
                 IN AND FOR THE COUNTY OF MARICOPA
10

11  BRIENNA CHAMBERLAIN, a               Case No. CV2018-012269
    married woman,
12                                       **REPLY IN SUPPORT OF
                  Plaintiff,             DEFENDANTS' MOTION TO
13                                       STRIKE PLAINTIFF'S
    v.                                   COMPLAINT AND TO SEAL ALL
14                                       STRICKEN PORTIONS**
    JAMES NUEMANN, a married man;
15  SHOUT OUTDOOR MEDIA, LLC, a          (Assigned to Hon. Margaret Mahoney)
    Missouri limited liability company;
16  and GLASS HALF FULL, LLC, an
    Illinois limited liability company;
17  JOHN AND JANE DOES I-X; ABC
    CORPORATIONS I-X; and BLACK
18  AND WHITE PARTNERSHIPS I-X,
19
                  Defendants.
20

21

22       Defendants hereby submit their Reply in Support of their Motion to Strike Plaintiff's

23  Complaint and to Seal All Stricken Portions. As set forth below, the Court should grant

24  Defendants' Motion and strike the allegations that are redundant, immaterial, impertinent, or

25  scandalous.

26  **I.    INTRODUCTION**

27       The nature of Plaintiff's allegations indicates she included the scandalous, immaterial,

28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

and impertinent allegations to inflict as much damage on Defendants as possible before the merits of the case are even heard. The allegations are irrelevant to the claims actually asserted in this lawsuit. For example, in Paragraph 2, Plaintiff goes out of the way to identify clients of Shout Outdoor Media by name, even though the identity of these clients is completely irrelevant to the claims in the lawsuit. It appears Plaintiff's intent is for Shout Outdoor Media's clients to learn about this lawsuit and cease doing business with it.

Perhaps most telling of Plaintiff's improper motive in making the extraneous allegations is the decision to name Glass Half Full, LLC ("Glass Half Full") as a Defendant in this action. The Complaint makes clear on its face that Plaintiff did not work at Glass Half Full at the time of the alleged tortious conduct. (Complaint, ¶¶ 31, 37). Despite the fact that Glass Half Full is completely unrelated to the claims asserted in the Complaint and not a proper Defendant,[1] Plaintiff chose to name Glass Half Full as a Defendant, presumably because of the high-profile nature of the restaurants it operates. Indeed, in Paragraph 2, Plaintiff specifically identifies the restaurants owned by Glass Half Full even though they have no bearing on this case. This demonstrates Plaintiff's goal of including the irrelevant allegations is to prejudice Defendant Neumann and his business interests.

Although there is not often a need for litigants to seek relief under Arizona Rule of Civil Procedure 12(f), Plaintiff's Complaint demonstrates why this Rule exists. Plaintiff is trying to litigate this case in the court of public opinion instead of the courtroom. Rather than include allegations based on the actual elements of the claims asserted, she throws out inflammatory, immaterial, impertinent, and scandalous material to inflict as much damage as possible. As set forth in more detail below, Defendants respectfully request that the Court strike the offending paragraphs of the Complaint and place them under seal to prevent further risk of prejudice to Defendants.

## II.    THE ALLEGATIONS ARE IMMATERIAL AND IMPERTINENT

In the Response, Plaintiff argues none of the allegations are immaterial or impertinent

---

[1] Defendants will be filing a motion to dismiss the improperly named Defendants as well as most of her substantive claims following the Court's order on this Motion.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

because "each of the allegations speaks directly to one of the following material issues: the disparate power dynamics between a powerful business owner and a young woman making $30,000 in her first real job; the pattern of harassment and abuse of that young woman and her female co-workers in the workplace by that same business owner; and the sexual assault and illicit photographing on the young woman while she was severely intoxicated and partially conscious." (Response, p. 4, ln. 20 – p. 5, ln. 5). Plaintiff's statement of the "material issues" demonstrates the immateriality and impertinent nature of the allegations when compared to the actual claims in this case.

Plaintiff's Complaint asserts the following torts: assault and battery, negligence, negligence per se, intentional infliction of emotional distress, and invasion of privacy. There are <u>no allegations</u> of sexual harassment under the Arizona Civil Rights Act or Title VII of the Civil Rights Act of 1964, as amended. The elements of these tort claims are straightforward. For assault or battery, Plaintiff needs to prove: (1) Defendants intended (a) to cause harm or offensive contact with her or (b) to cause her apprehension of an immediate harmful or offensive contact; (2) Defendants caused her apprehension of an immediate harmful or offensive contact or caused her harmful or offensive contact; and (3) damages. Restatement (Second) of Torts §§ 13-34. For negligence per se, Plaintiff must prove that Defendants violated an Arizona statute. For negligence, Plaintiff must prove a duty, breach of duty, causation, and damages. For intentional infliction of emotional distress, Plaintiff must prove: (1) Defendants' conduct was extreme and outrageous; (2) Defendants' conduct was either intentional or reckless; and (3) Defendants' conduct caused Plaintiff to suffer severe emotional distress. *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 905 P.2d 559 (App. 1995). Finally, for invasion of privacy, Plaintiff must prove: (1) Defendants intentionally invaded her primacy; (2) the invasion would be highly offensive to a reasonable person; (3) the invasion caused damages; and (4) damages. *See Hart v. Seven Resors, Inc.*, 190 Ariz. 272, 279 P.2d 846, 853 (App. 1997).

None of these claims include elements that address "disparate power dynamics" or "patterns of harassment" of other individuals – which are the "material issues" Plaintiff

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

claims she is addressing with the unnecessary allegations. These allegations are clearly immaterial and impertinent to the claims at hand. Plaintiff's additional description of the issues she is addressing include the following: "Mr. Neumann's significant business background; Ms. Chamberlain's minimal professional experience; the environment of sexual harassment Mr. Neumann created in MS. Chamberlain's workplace; Mr. Neumann's history of sexually harassing and abusing Ms. Chamberlain; Mr. Neumann's history of sexually harassing and abusing other female employees . . ." (Response, p. 4, lns. 11-16). Some of these allegations may be relevant if Plaintiff had asserted a sexual harassment claim, but none of these "issues" are related to or necessary for any of the actual claims she asserted in the lawsuit. Accordingly, Defendants respectfully request that the Court strike the paragraphs of the Complaint that are impertinent or immaterial, and place them under seal.

## III.    THE ALLEGATIONS ARE SCANDALOUS

In arguing the allegations set forth in Defendants' Motion are not scandalous, Plaintiff does not bother to respond to any of the specific Paragraphs of the Complaint identified by Defendants. Rather, Plaintiff makes the following blanket statements: "These allegations contain no repulsive language. They are not irrelevant to the action." (Response, p. 5, lns. 15-16). Notably, Plaintiff does not provide any argument as to why or how the allegations are actually relevant to this lawsuit. That is because she cannot do so.

Plaintiff has asserted intentional torts against Defendants based on alleged events that occurred in Las Vegas on October 2, 2016. However, many of the allegations in the Complaint include defamatory statements that are irrelevant to the allegations in the lawsuit. For example, in Paragraph 33, Plaintiff makes statements about "regular acts of sexual harassment of other female employees" and an allegation that Defendant Neumann "bragg[ed] about cheating on his wife." These statements are defamatory and completely irrelevant. There is no claim of sexual harassment in this lawsuit and allegations of Defendant Neumann's alleged marital conduct is solely meant to cause him harm and are not related to this case. As another example, in Paragraph 45, Plaintiff makes a defamatory statement regarding Mr. Neumann's conduct with another woman. This allegation is

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

unrelated to the actual claims in this lawsuit, and was meant solely to damage and defame Mr. Neumann.

Examples of Plaintiff's scandalous allegations are littered throughout the Complaint. Because Plaintiff does not even explain how the specifically identified Paragraphs set forth in Defendants' Motion are actually relevant to the claims asserted in the lawsuit, Defendants respectfully request that the Court strike all scandalous allegations and place them under seal.

## IV. DEFENDANTS WILL BE PREJUDICED IF THESE ALLEGATIONS ARE NOT STRICKEN AND SEALED

Given the nature of the allegations, the irrelevance to the claims asserted in the lawsuit, and Plaintiff's clear intent to inflict as much damage on Defendants as possible, Defendants will be prejudiced if Plaintiff's scandalous, impertinent, or immaterial allegations are not stricken. Plaintiff went out of her way to identify clients, business interests, and business partners of the Defendants. She also included extraneous allegations demonstrating intent to damage Defendant Neumann's reputation in the business community and with his friends and family. If Plaintiff is allowed to maintain these allegations in the public records, Defendants will be prejudiced.

## V. CONCLUSION

Based on the foregoing, the Complaint is rife with immaterial, impertinent, and scandalous allegations. Defendants respectfully request that the Court strike these allegations and order them under seal.

DATED this 19th day of November, 2018.

*s/ Kristy L. Peters*
Kristy L. Peters
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.

Attorneys for Defendants

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-5-

ORIGINAL e-filed and COPY served via
AZ Turbocourt this 19th day of
November, 2018, to:

The Honorable Margaret Mahoney
Maricopa County Superior Court Judge

COPY mailed and/or emailed this 19th day
of November, 2018, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

*s/ Linda Bullis*

FIRMWIDE:160182536.1 999999.2912

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-6-

Chris DeRose, Clerk of Court
*** Electronically Filed ***
G. Verbil, Deputy
11/27/2018 8:00:00 AM
Filing ID 9911559

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:   602.474.3600
   Facsimile:   602.957.1801
6
7  Attorneys for Defendants
8
9          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
10            IN AND FOR THE COUNTY OF MARICOPA
11

| | |
|---|---|
| 12  BRIENNA CHAMBERLAIN, a married woman, | Case No. CV2018-012269 |
| 13              Plaintiff, | **ORDER GRANTING EX PARTE APPLICATION FOR SUBSTITUTION OF COUNSEL OF RECORD** |
| 14  v. | |
| 15  JAMES NUEMANN, a married man; | **(With Client Consent)** |
| 16  SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; | (Assigned to Hon. Margaret R. Mahoney) |
| 17  and GLASS HALF FULL, LLC, an Illinois limited liability company; | |
| 18  JOHN AND JANE DOES I-X; ABC | |
| 19  CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X, | |
| 20 | |
| 21              Defendants. | |

22
23        The Court having reviewed Defendants' Application for Substitution of Counsel;
24        IT IS HEREBY ORDERED granting Defendants' Application for Substitution of
25  Counsel.
26        IT IS FURTHER ORDERED Robert T. Mills, Sean A. Woods, and Jordan C. Wolff
27  of Mills + Woods Law, PLLC are hereby withdrawn as counsel of record for Defendants.
28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1    IT IS FURTHER ORDERED Kristy L. Peters and Peter C. Prynkiewicz of Littler

2 Mendelson, P.C. are now counsel for Defendants.

3

4 DATED: _____

5

6

7                                      _____
                                       Honorable Margaret R. Mahoney
8                                      Maricopa County Superior Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-2-

# eSignature Page 1 of 1

**Granted with Modifications**



/S/ Margaret Mahoney Date: 11/21/2018
Judicial Officer of Superior Court

**ENDORSEMENT PAGE**

CASE NUMBER: CV2018-012269

E-FILING ID #: 9911559

SIGNATURE DATE: 11/21/2018

FILED DATE: 11/27/2018 8:00:00 AM

JORDAN C WOLFF

STEPHEN DOMINIC BENEDETTO

DOCKET-CIVIL-CCC

1    THE PEOPLE'S LAW FIRM, PLC
     Stephen D. Benedetto (Ariz. Bar No. 022349)
2    Heather Hamel (Ariz. Bar No. 031734)
     645 North 4th Avenue, Suite A
3    Phoenix, Arizona 85003
     Telephone: (602) 456-1901
4    Facsimile: (602) 801-2834
     benedetto@the-plf.com
5    hamel@the-plf.com

6    *Attorneys for Plaintiff Brienna Chamberlain*

7              IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

8                 IN AND FOR THE COUNTY OF MARICOPA

9

10   BRIENNA CHAMBERLAIN, a              Case No. CV2018-012269
     married woman,

11                  Plaintiff,
                                         **ACCEPTANCE OF SERVICE OF**
12   v.                                  **PROCESS**

13   JAMES NUEMANN, a married man;
     SHOUT OUTDOOR MEDIA, LLC, a
14   Missouri limited liability company;
     and GLASS HALF FULL, LLC, an
15   Illinois limited liability company;
     JOHN AND JANE DOES I-X; ABC
16   CORPORATIONS I-X; and BLACK
     AND WHITE PARTNERSHIPS I-X;
17
18                  Defendants.

19

20         KRISTY PETERS, pursuant to Rule 80(i), states as follows:

21         1.     I am attorney of record for Defendant James Neumann in this Action.

22         2.     I hereby acknowledge that I received copies of the following documents

23   from counsel for Plaintiff Brienna Chamberlain: Summons; Complaint; and Certificate

24   Regarding Compulsory Arbitration.

25         3.     I hereby accept service of process of the above-enumerated documents on

26   behalf of my client, James Neumann, as if they had been personally served, and I waive

return of service hereof.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Kristy Peters

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Brienna Chamberlain*

IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No. CV2018-012269 |
| Plaintiff, | **MOTION FOR LEAVE TO AMEND COMPLAINT** |
| v. | |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; | |
| Defendants. | |

Pursuant to Rule 15(a), Ariz. R. Civ. P., Plaintiff Brienna Chamberlain, through undersigned counsel, hereby moves the Court for an Order granting her leave to file her Amended Complaint in the above-referenced matter.[1] A copy of the proposed Amended

---

[1] Under ordinary circumstances, Plaintiff would have waited to coordinate with Defendants regarding potentially obtaining consent to file an Amended Complaint, per Rule 15. Insofar as Plaintiff's Amended Complaint bears directly on the arguments raised in Defendants' Motion to Strike and Seal, however, Plaintiff files for Leave to Amend with the Court now to ensure that the Court has the benefit of the Amended Complaint before ruling on Defendants' Motion.

Complaint, redlined to show changes from the original Complaint, is attached hereto as "Exhibit A."

## I.  Overview

This case arises out of the sexual assault of Brienna Chamberlain by her employer and his two companies for which she worked.  Prior to filing this Complaint, Ms. Chamberlain filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation.  The EEOC had not yet resolved its investigation at the time the statute of limitations on Ms. Chamberlain's personal injury claims ran.  Accordingly, Plaintiff's employment claims were not yet ripe at the time she filed her original complaint in this matter on September 28, 2018.  On December 4, 2018, however, the EEOC issued a "Right to Sue" letter to Ms. Chamberlain.  She now proposes amending her Complaint in this matter to add these causes of action.

## II.  Legal Authority.

Rule 15(a) permits amendment by leave of the court, which "shall be freely given when justice requires."  Ariz. R. Civ. P. 15(a).  Leave to amend "has been granted under Rule 15(a) at various stages of the litigation: following discovery; after a pretrial conference; at a hearing on a motion to dismiss or for summary judgment; after a motion to dismiss has been granted but before the order of dismissal has been entered; when the case is on the trial calendar and has been set for a hearing; at the beginning, during, and at the close of trial; after a judgment has been entered; and even on remand following an appeal."  *Spitz v. Bache & Co*., 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979) *quoting* Wright & Miller, 6 Federal Practice and Procedure, § 1488.

## III.  Legal Analysis

This is a textbook case for amendment.  It is the very outset of the case, and Defendants have yet to even answer the Complaint.  Discovery has not even commenced, and initial disclosures have not yet been exchanged.  And the proposed Amended Complaint

1   is based upon the same facts and events as are already at issue:  Plaintiff seeks only to add

2   a two additional claims that had not yet ripened at the time she filed her original complaint.

3   **IV.**   **Conclusion**

4          In light of the foregoing, Plaintiff respectfully requests that the Court grant her leave

5   to file her Amended Complaint in the form attached hereto as **Exhibit A**.

6          RESPECTFULLY SUBMITTED this 20th day of December, 2018.

7                                                      THE PEOPLE'S LAW FIRM
                                                       645 North 4th Avenue, Suite A
8                                                      Phoenix, Arizona  85003

9

10                                                     By: /s/ Stephen D. Benedetto
                                                            Stephen D. Benedetto
11                                                          Heather Hamel

12                                                     *Attorneys for Plaintiff Brienna Chamberlain*

13

14  ORIGINAL of the foregoing electronically
    filed this 20th day of December, 2018
15  utilizing AZ Turbo Court, which caused
    a COPY of the same to be electronically
16  transmitted to:

17  The Honorable Margaret Mahoney
    Maricopa County Superior Court – ECB 411
18  101 W. Jefferson
    Phoenix, Arizona  85003
19

20  COPY of the foregoing sent via U.S. Mail
    and electronic mail this same date to:
21
    Kristy L. Peters, Esq.
22  Peter C. Prynkiewicz, Esq.
    LITTLER MENDELSON, P.C.
23  2425 East Camelback Road, Suite 900
    Phoenix, Arizona  85016
24

25  By: /s/ Rudy Navarrete
         *An employee of The People's Law Firm*
26

- 3 -

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Brienna Chamberlain*

IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; | (JURY TRIAL DEMANDED) |
| Defendants. | |

For her Complaint against Defendants James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC, Plaintiff Brienna Chamberlain, hereby alleges as follows:

## **INTRODUCTION**

1.      This case involves the type of disparate power dynamics, sexual abuse of young women, and institutional complicity in sexual assaults that have gone unexposed and unchecked for far too long in this country.  It is a reality that has taken center stage at

the United States Senate's Supreme Court confirmation hearings, and one that our society is no longer willing to allow to be swept under the rug.

2. Jim Neumann is a well-known Chicago businessman who owns and operates trendy restaurants and outdoor media companies throughout the United States, including the Glass Half Full restaurant group (which owns Phoenix-area restaurants Old Town Gringos, Camp Social, and The Hatter and Hare) and Shout Outdoor Media (an outdoor marketing company which lists Wal-Mart, McDonald's, and Pepsi among its clients).

3. At the time of the events that gave rise to this Complaint, Brienna Chamberlain was an aspiring medical student who was saving money for school and working in a $30,000-a-year administrative position for Neumann's company.

4. In October 2016, Neumann lured Ms. Chamberlain to Las Vegas under the pretense of a business trip. He took her to a strip club, waited until she blacked out, and suggested to her that she must have been "roofied." Then he carried her back to his hotel room where he sexually assaulted her and took photographs of her while she was unconscious.

5. Such abuse should belong to bygone eras. Unfortunately, this case, like so many others, is being brought today because powerful men, like Neumann, continue to prey upon, exploit, harass, and assault women with impunity. Indeed, this is not even the first time Neumann has been subjected to a civil suit for exploiting the power dynamics of his workplaces to harass, fondle, grope, abuse, and sexually assault scores of women: In 2008, a St. Louis jury issued a $1.1 million verdict against Neumann for bringing an employee to Las Vegas, bringing her into his room, straddling her and masturbating while she was sleeping. And nearly two years after her assault, Ms. Chamberlain continues to be re-traumatized hearing about Neumann's continuing abusive behavior towards his own employees.

6.     Ms. Chamberlain now brings this action for the same reasons so many women are coming out of the shadows: to shine a light on behavior that is intolerable in our modern society, to seek redress for the substantial emotional and physical harm she endured at the hands of Neumann and his companies, and most importantly, to send a clear and unequivocal message to Neumann that the years-long gender-based hostile work environments and sexual harassment in which he has engaged, and continues to engage, is unacceptable and will not be tolerated in our State.

## PARTIES

7.     Plaintiff Brienna Chamberlain is a married woman residing in Phoenix, Arizona.

8.     Upon information and belief, Defendant James Neumann is a married man who owns a home in Paradise Valley, Arizona, and resides for at least part of the year in Arizona.

9.     Upon information and belief, at the time of the events that gave rise to this Complaint Defendant Shout Outdoor Media, LLC ("SOM") was a Missouri limited liability company that is duly licensed to do business in Maricopa County, Arizona.  SOM is responsible for establishing, administering, and applying company-wide policies, which directly affect all employees.  During the times relevant to this Complaint, SOM employed Ms. Chamberlain at its location in Maricopa County.

10.     Upon information and belief, at the time of the events that gave rise to this Complaint, Defendant Glass Half Full, LLC ("GHF") was an Illinois limited liability company that is duly licensed to do business in Maricopa County.  GHF is responsible for establishing, administering, and applying company-wide policies, which directly affect all employees.

11.     For the purpose of this Complaint, SOM and GHF are each responsible for Neumann's wrongful acts and omissions under the doctrine of *respondeat superior*.

1    12.    John and Jane Does I-X, ABC Corporations, and Black and White Partner are
2 fictional defendants, so named on information and belief, whose names will be substituted
3 with the names of actual defendants once their names become known.

4                              **JURISDICTION AND VENUE**

5    13.    The Maricopa County Superior Court has jurisdiction over this action
6 pursuant to Article VI, section 14 of the Arizona Constitution and A.R.S. § 12-123.

7    14.    Venue is proper in this Court insofar as Plaintiff resides in this county,
8 Defendant Neumann owns property in this County, and SOM and GHF both operate
9 businesses that are duly licensed to do business in this County.

10    15.    This case presents an actual case in controversy arising under Arizona state
11 law.

12                              **GENERAL ALLEGATIONS**

13                    Neumann Builds a Restaurant Empire

14    16.    Neumann is a successful marketing professional and, more recently,
15 restauranteur. After starting his career in outdoor media, installing billboard signs for 3M,
16 Neumann developed a talent for outdoor marketing. A charismatic and effective salesman,
17 he quickly moved up the corporate chain, becoming the youngest Vice President in 3M's
18 110-year history. Since then, he has worked for and started numerous media firms, and
19 earned the award "100 Marketers Who Changed American Culture."[1]

20    17.    Neumann parlayed this early success and praise into his own businesses. In
21 2004, he founded AdOne Media, Inc., an outdoor marketing company incorporated in
22 Nevada and based in St. Louis, Missouri. After facing civil lawsuits for alleged racketeering
23 and sexual assault, Neumann shuttered AdOne, moved to Chicago, and began to explore
24 developing a presence in Scottsdale, Arizona.

25

26 _____
     [1] *See* https://j-neuman.tumblr.com/post/173664680813/jim-neumann-a-marketer-who-changed-american

                                        - 4 -

1   18.     In 2016, Neumann opened Glass Half Full, LLC, a parent company to scores

2   of restaurants and bars all over the country.  Through this company (and others of the same

3   name), Defendant Neumann opened Optima, a two-story rock n'roll bar and lounge based

4   in downtown Chicago; The Rabbit Hole, an "Alice in Wonderland" themed bar in the same,

5   hip neighborhood; and Wild Child, an upscale Chicago eatery with a "Soho, New York type

6   feel."[2]  In the Phoenix metropolitan-area, Neumann opened Old Town Gringos, the Hatter

7   and Hare, and Camp Social—novelty-theme bars that quickly became, along with Neumann

8   himself, hallmarks of the Valley's social scene.

9                          <u>Neumann's History of Sexual Harassment and Abuse</u>

10  19.     Among those with whom he has worked, Neumann is known for more than

11  his trendy bars and vast fortune.  In fact, many of his employees, especially his female

12  employees, tell a much different story.  These women discuss Neumann in whispers and

13  warnings.  They recount a years-long pattern, where Neumann would use his power to

14  sexually exploit scores of women.  These women have witnessed or experienced the

15  indignities of being harassed, propositioned, forcibly kissed, groped, fondled, or assaulted

16  by Neumann – bearing this abuse in angry silence or through fake smiles, learning that if

17  they played off his advances with humor they could avoid upsetting him and potentially

18  losing their ability to make ends meet.

19  20.     The most public example of Neumann's misconduct came in 2007, when he

20  was still running AdOne in St. Louis.  Sherry Flotron, one of Neumann's employees filed a

21  lawsuit alleging that Neumann had begun sexually harassing her almost immediately upon

22  her hiring; that he would comment on her "nice ass" or repeatedly inquire about her

23  underwear; and that, on one business trip to Chicago in which Defendant Neumann isolated

---

[2] Hall, Gina, "Chicago Restaurant group moving to Phoenix, citing more 'opportunity,'" Chicago Business Journal, May 16, 2017, available at: https://www.bizjournals.com/chicago/news/2017/05/16/chicago-restaurant-group-moving-to-phoenix-citing.html

1   her, forcibly kissed her, and propositioned her for sex (removing his shirt and demanding a

2   back rub when she turned him down). [3] In another incident that eerily echoes Ms.

3   Chamberlain's experience, Ms. Flotron alleged that Neumann lured her to Las Vegas under

4   the pretense of a business trip.  Once there, Neumann sexually assaulted Flotron by

5   undressing himself, climbing on top of her, and masturbating and ejaculating onto her while

6   she slept.[4]  The jury in that case awarded her $1.1 million.

7       21.     Nearly a decade later, one of Ms. Chamberlain's coworkers recalled similar

8   conduct.  She disclosed a time that Neumann encouraged her to bend over in front of him,

9   presumably so that he could ogle her.  She recalls Neumann's first remarks to her after she

10  was hired: "Damn! There goes my chances of sleeping with you…. Or does it?"  She recalls

11  observing Neumann routinely and non-consensually touching female employees.  And she

12  remembers all tell well the time that Neumann followed her into very small supply closet,

13  getting uncomfortably close to her in an enclosed space.

14      22.     These stories are simply examples of a widespread trend.  In fact, it appears

15  that virtually all of Neumann's female employees experienced some form of sexual

16  harassment or assault:  Neumann would regularly grope and grab employees' butts without

17  permission, would attempt to kiss them, would coerce or request that they stroke his penis

18  when he offered them rides home, and would routinely send sexually explicit text messages

19  to female employees over group message threads.

20                   Brienna Chamberlain Begins Working for Neumann

21      23.     In 2014, Brienna Chamberlain was looking for work.  A 2010 graduate of

22  Arizona State University, Ms. Chamberlain wanted to pursue a career in medicine, serving

23

24      [3] Hamilton, Keegan; *Stripped Bare:  Sometimes Even Chesterfield CEOS like Jim Neumann,
        Must Stand Naked*; RiverFront Times, March 19, 2008, available at:
25      https://www.riverfronttimes.com/stlouis/stripped-bare-sometimes-even-chesterfield-ceos-like-
        jim-neumann-must-stand-naked/Content?oid=2454135.
26      [4] *Id*.

marginalized populations abroad, particularly in Africa. To lay a foundation for her career, she spent much of the first five years of her career working in Non-Governmental Organizations. She volunteered at a home that housed orphaned children in Kenya. She worked for a Phoenix-based support center for homeless teens, and she spent time working as a teacher in South Africa.

24. To supplement her volunteer work, Ms. Chamberlain worked part-time as a bartender, as she had during her college years.

25. In 2014, Ms. Chamberlain received a call from an old colleague, Dave Corba, with a job opportunity. He wanted her to help him open a bar – "Old Town Gringos" in Old Town Scottsdale – that had recently been purchased by a new company called Glass Half Full, LLC ("GHF").

26. At the time, Ms. Chamberlain was unaware that GHF was owned by Neumann, had never met him, and was wholly naïve about his history of sexual predatory behavior.

27. Ms. Chamberlain worked hard as a bartender at "Old Town Gringos," and it didn't take long for her exceptional work ethic and obvious intelligence to stand out. Within weeks of starting, Ms. Chamberlain was singled out for attention by Neumann.

28. Neumann expressed to Ms. Chamberlain that her education and skill-set would be better utilized in a management position than behind the bar, and he moved her into a position as the sales/public relations manager for GHF.

29. Part of Ms. Chamberlain's job responsibilities at GHF included marketing and promotions, which required her to work with SOM, Neumann's other company.

30. Before long, Ms. Chamberlain was managing and assisting SOM employees, and was actively working for both GHF and SOM, while earning an annual salary of approximately $30,000. This dual employment was not unusual. GHF and SOM were both

1  owned by Neumann, worked closely together, and had numerous employees who did work

2  for both businesses, irrespective of which business ultimately signed their paycheck.

3      31.    In the summer of 2017, Neumann transferred Ms. Chamberlain to SOM full-

4  time, to work as its real estate developer.

5      32.    As a managerial employee for SOM, Ms. Chamberlain was required to sign

6  an "Employment Agreement" confirming that although her employer was formally Shout

7  Outdoor Media, it was a holding company for Shout Outdoor Marketing, Glass Half Full,

8  LLC, and Airespot/Passport, a technology company.

9  <u>Neumann's Sexual Harassment of Ms. Chamberlain begins</u>

10      33.    During Ms. Chamberlain's employment at GHF and SOM, she observed

11  Neumann's regular acts of sexual harassment of other female employees. She observed

12  him talking openly, and inappropriately, of his sexual encounters; groping and even kissing

13  female employees, many of whom did not want such attention; and bragging about cheating

14  on his wife so often that he developed his own clever slogan for it ("My wife is married,

15  but I'm not.").

16      34.    Neumann did not spare Ms. Chamberlain from such abuse. At work, he would

17  regularly grab and grope her buttocks and make inappropriate comments about her

18  attractiveness, her body, or his sexual preferences. Uncomfortable with his actions but

19  feeling powerless to do anything about it without risking her job, Ms. Chamberlain learned

20  to mimic the way her female co-workers would respond to him: slapping his hand off of

21  her body while smiling, chuckling, and rolling her eyes at him to deflect from the conduct.

22      35.    One night, a visibly intoxicated Neumann attempted to kiss Ms. Chamberlain

23  while they were at the bar after work. When Ms. Chamberlain rebuffed his untoward

24  advances, Neumann became enraged and stormed out of the bar.

25      36.    Ms. Chamberlain, like many of her female co-workers, continued to worry

26  about upsetting Neumann by denying his advances. Despite Neumann's abuse, Ms.

Chamberlain took pride in her career and was pleased with how quickly she had advanced. She was regularly working with clients and contractors twice her age, managing large advertising portfolios, and was quickly learning a business she knew nothing about. She felt like maintaining this important piece of her identity – her career – depended on keeping her boss happy. So, like her other female coworkers, Ms. Chamberlain simply found ways to deal with her boss's behavior, repugnant as it often was, without putting her job at risk.

<u>The Las Vegas Trip—Day One</u>

37. In September 2016, Neumann told Ms. Chamberlain that he would be taking a business trip to Las Vegas to conduct due diligence on a property that a client wished to explore for placement of a new billboard.

38. Skeptical that Neumann simply wanted her to come to Las Vegas to party with him and his friends, and not interested in such an invitation, Ms. Chamberlain specifically confirmed with him that this trip was for business purposes. Neumann confirmed the existence of the potential property and shared more details with Ms. Chamberlain.

39. Satisfied that this was a work trip with a real business objective – to inspect and assess a property for a client's desired billboard – Ms. Chamberlain agreed to go to Las Vegas. Neumann then booked her flight.

40. As initially planned and communicated to Ms. Chamberlain, the business trip was supposed to be for two days: She would arrive Saturday morning and leave Sunday afternoon.

41. On Saturday morning, October 1, 2016, Ms. Chamberlain flew to Las Vegas on the flight Neumann had booked for her. When the flight landed, Ms. Chamberlain sent a text message to Neumann, as he had instructed her to do, informing him that she had arrived. Neumann responded that he was at Ceasar's Palace "at the pool" and instructed Ms. Chamberlain to meet him there.

42. Ms. Chamberlain took a cab from the airport to the hotel. When she arrived, a GHF consultant, Autumn Pippenburg, was waiting to bring her to her room so that she could drop off her bag and change into her swimsuit. It was at this time that Ms. Chamberlain learned that Neumann had only booked two rooms – one for her, and one that he would share with Ms. Pippenburg.

43. Ms. Chamberlain brought her luggage to her room and changed into a swimsuit. Ms. Pippenburg then led her to the pool area.

44. When the women arrived to the pool area, Ms. Chamberlain learned for the first time that Neumann had reserved space in the "adult" section of the pool, which permitted topless sunbathing.

45. At one point, he began to kiss Ms. Pippenburg and instructed her to take off her top. He then turned to Ms. Chamberlain and said, with a smile, "it's your turn." Ms. Chamberlain refused and made clear that she was offended.

46. After spending some time at the pool, Neumann led the group to the casino floor so he could gamble. During this time Ms. Chamberlain returned to her room. She ate dinner that night separately from Neumann and Ms. Pippenburg, and returned to her room to go to sleep.

The Las Vegas Trip—Day Two

47. When Ms. Chamberlain awoke on Sunday morning, she sent a text message to Neumann, asking what time they were going to look at the billboard property. About thirty minutes later, Defendant Neumann called her hotel room and told her to meet him downstairs by the elevator.

48. When Ms. Chamberlain arrived downstairs, she assumed they would be heading out to look at the property she had been brought to Las Vegas to review. She would certain learn that she was mistaken.

- 10 -

49. With Ms. Pippenburg having apparently left, Neumann was alone and indicated that he needed to eat. He suggested that the two of them get brunch before going to the property.

50. During their meal, Ms. Chamberlain suggested that Neumann reach out to the client to arrange a time to visit the property. Neumann then indicated that his phone was dead. The two then left the restaurant to purchase a phone charger.

51. After purchasing the phone charger, Neumann suggested they go to a bar and order some drinks while his phone recharged. They did so, and afterwards they went to another restaurant to watch the end of the Chicago Bears football game.

52. As they watched, Ms. Chamberlain again suggested that Neumann reach out to the client to schedule a specific time to visit the property. In response, Neumann suggested that they check the property out themselves, extend their stay an additional night, and take the client out to dinner.

53. Fancy client-development dinners were not something that Ms. Chamberlain had experienced before, and she was excited at the opportunity. She contacted her husband to get his thoughts on her staying an additional night. After confirming with her husband that he was amenable to her staying an additional night, Ms. Chamberlain told Neumann.

54. Visibly pleased, Neumann responded by smiling and asking her if he should "extend both rooms" for another night or "only his" – insinuating that he wanted to spend the night with her. Accustomed to such comments and used to dealing with them, Ms. Chamberlain did what she always did: She treated his invitation as a joke. She smiled, rolled her eyes, and indicated that she would need her own room for the night.

55. Neumann then suggested that they go visit the property, and he and Ms. Chamberlain took a cab to the property.

56. During the cab ride to the property, Neumann began looking at his phone and informed Ms. Chamberlain that he could not find the email with information about the

1 alleged property. When Ms. Chamberlain asked what he could remember about the
2 property, Neumann responded that it was near a Harley Davidson dealership.

3     57. Frustrated at her boss's apparent disorganization but trying to be helpful, Ms.
4 Chamberlain googled Harley Davidson dealerships on her cell phone and directed the cab
5 driver to the only dealership in Las Vegas. When they arrived, they observed that the
6 dealership already had multiple billboards on it, ruling out the property as a potential
7 billboard placement.

8     58. Unable to find the correct property, Neumann suggested that they go to a strip
9 club – the Spearmint Rhino – to get a drink and watch football while they waited for an
10 employee to text message them with the proper address. This was not an entirely unusual
11 request: Many of SMO's clients were strip club property owners, and Ms. Chamberlain
12 had been to many similar establishments on behalf of SOM before. She even took a picture
13 of the billboards outside the Spearmint Rhino when she arrived. So, although she was not
14 excited at the proposal, and was irritated that Neumann kept dodging work, Ms.
15 Chamberlain didn't suspect anything above and beyond Neumann's usual antics. To this
16 day, she regrets that decision – perhaps more than any she's made in her life.

The Spearmint Rhino and Cab Ride Back

18     59. It was approximately noon on Sunday when Neumann and Ms. Chamberlain
19 arrived at the Spearmint Rhino. They ordered a round of drinks as Neumann began talking
20 to an exotic dancer.

21     60. After several more rounds of drinks, Neumann paid the woman for a "table
22 dance" (an act where a dancer will touch, fondle, and rub against the patron for several
23 minutes), and then asked her to dance on Ms. Chamberlain. Ms. Chamberlain refused,
24 apologizing to the woman, and asking her to return to Neumann.

25     61. After the dance, another patron with whom Neumann had been chatting
26 purchased a round of shots for the group.

62.     After one or more additional rounds that her boss or his new friend had bought, things got very blurry very quickly.

63.     Ms. Chamberlain's memory moving forward is mostly hazy, with isolated moments of clarity:  She remembers Neumann helping her walk out of the strip club; she remembers collapsing on the ramp outside of the club, unable to stand; she remembers Neumann telling her that she "must have been roofied" as they waited for a cab; and she remembers passing out on the floor of the cab.  From there forward, she has a vague recollection of Neumann carrying her, fireman style, through the halls of the hotel; and she remembers throwing up, profusely, in the hotel toilet.

64.     At one point thereafter, Ms. Chamberlain awoke out of her unconscious (or semi-conscious) state to find herself lying on a bed with Neumann licking her vagina through her underwear and digitally penetrating her.  Vaguely comprehending what was happening, she attempted to move and resist, but found herself unable to do so before quickly losing consciousness again.

65.     Ms. Chamberlain started to regain consciousness that afternoon and was roused awake by the generic sound of a cell phone camera "clicking."  She slowly opened her eyes to find herself lying on a bed with Neumann above her, seemingly taking photos of her partially naked and unconscious body.

66.     Ms. Chamberlain tried to kick and protest.  She demanded that he explain what he was doing.  Neumann became instantly apologetic, and urged her to calm down.

67.     Overwhelmed, confused, and upset, Ms. Chamberlain asked where she was and what had happened.  Then she started to cry, and asked Neumann for her cell phone.

68.     Neumann told Ms. Chamberlain that she had lost her phone at the Spearmint Rhino, and Ms. Chamberlain asked Neumann for his phone.  She groggily attempted to call Rob Holmberg, one of her co-workers at SOM.  When Holmberg did not answer, she attempted to send him a text message, from Neumann's phone.

- 13 -

69.     As Ms. Chamberlain waited for him to respond, she began to be overcome with a sense of disorientation and exhaustion.  The room started spinning and, again, she lost consciousness.

70.     When Ms. Chamberlain regained consciousness, she was still lying on the bed. Neumann was on the phone with someone – who, upon information and belief, was Neumann's friend, retired Chicago Police Officer Tom Goggins.  While on the phone, Neumann came over to Ms. Chamberlain, rubbed and kissed her butt and then walked away.

71.     Finally coherent enough to realize what was happening, and alert enough to stand on her own, Ms. Chamberlain got off the bed and asked where her clothes were. Neumann informed her and Ms. Chamberlain quickly got dressed.

72.     Neumann then gave Ms. Chamberlain her cell phone, which he claimed to have gotten back from the Spearmint Rhino.

73.     In her disoriented state, Ms. Chamberlain inadvertently dialed a colleague without realizing it.  The colleague texted her back and asked if everything was "okay." Ms. Chamberlain responded "no," and indicated that she "couldn't talk" because Neumann was still there.  The colleague responded by instructing her to go to security immediately, "or pull the fire alarm if you need to."

74.     On her way back to her room, she called the same colleague.  When she told him what had happened with Neumann, he informed her that Defendant Neumann had a history of sexually violent behavior.

75.     After this phone call, Ms. Chamberlain called Mr. Holmberg. He informed Ms. Chamberlain that Neumann had called him, worried that she would claim he "did something to her."  Ms. Chamberlain told Mr. Holmberg what happened and he instructed her to contact the authorities.

76.     Still disoriented and confused but deeply upset and sick to her stomach, Chamberlain went to hotel security and asked to see the surveillance footage of her

- 14 -

returning to the hotel – hoping to piece together what happened between the Spearmint Rhino and her waking up in Neumann's bed.  After hearing her story, hotel security immediately called the Las Vegas Police Department who took her to a hospital for medical examination and DNA testing.

77.     Ms. Chamberlain was provided several options for an exam at the hospital, and submitted to a thorough gynecological exam to evaluate possible injuries.

78.     She was then told by police that forensic investigators would need to take photos of the inside of her body, to document the bruising to her throat and the hernia on her rectum that medical personnel had observed.  Feeling like she had already been violated (and photographed) enough, Ms. Chamberlain informed police that she was not comfortable with such an invasive investigation.

79.     The next morning, Ms. Chamberlain called SOM Senior Vice President Kevin Hoppe.  She explained that some "bad stuff" had happened with Neumann over the weekend that she did not want to discuss, but she would explain more in person.  Still concerned about keeping her job, she asked if Hoppe would keep it between them until she could speak with him in person.

80.     During the call with Hoppe, Ms. Chamberlain also requested that she be placed on a new flight, so that she wouldn't have to be on the same plane as Neumann, and asked for time off work.  Mr. Hoppe approved the requests, and indicated that he would speak with Neumann to "get his side of the story."

<u>Return to Arizona</u>

81.     Ms. Chamberlain returned to Arizona deeply traumatized.  She didn't know how to process the violation that had been visited upon her.  She didn't know what this meant for her body or her well-being.

82.     Ms. Chamberlain also didn't know what any of this meant for her career and future plans.  She wanted to return to work, but couldn't stomach the thought.  She

1 scheduled a time to meet with Hoppe and CFO Kathleen De Volld and tell them what
2 happened. They told her to take time off and they would get Neumann's "side of the story."

3   83. Ms. Chamberlain immediately began experiencing symptoms of severe
4 trauma – intense anxiety, depression, and insomnia. She saw a trauma specialist who
5 recommended she undergo treatment.

6   84. Ms. Chamberlain was petrified at the thought of returning to work. Neumann
7 was not merely an employee who she could avoid if necessary. He was the company owner.
8 And no one had ever held him accountable for his abuse of other employees.

9   85. Ms. Chamberlain felt she had no recourse against Neumann and no path to
10 return to her job. Moreover, she had learned that SOM leadership had inexplicably *moved*
11 *Neumann into Ms. Chamberlain's office*, which meant that she if she returned, she would
12 have to share an office with the man who had sexually assaulted her.

13   86. Believing that she had no other choice, Ms. Chamberlain eventually informed
14 SOM leadership that she would not be returning to the company.

15   87. Almost immediately thereafter, SOM pursued major corporate restructuring
16 that had not been previously discussed with employees: On October 24, 2016, Neumann
17 formed Shout Outdoor Media, LLC in Delaware. In late November and early December
18 2016, Neumann dissolved Shout Outdoor Media, LLC with the Illinois Corporation
19 Commission and formed a new version of Shout Outdoor Media, LLC in Illinois, omitting
20 himself as the statutory agent of this new company. At this same time, he formed Shout
21 Outdoor Media LLC in Delaware; formed Shout Outdoor Media Arizona, LLC (a Delaware
22 limited liability company that was a wholly owned subsidiary of the Delaware Shout
23 Outdoor Media, LLC); and merged the Missouri Shout Outdoor Media, LLC with the
24 Delaware Shout Outdoor Media, LLC.

25

26

/ / /

### FIRST CLAIM FOR RELIEF
**Assault and Battery**
**(Against All Defendants)**

88.     Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

89.     As set forth herein, Neumann caused harmful or offensive contact with Ms. Chamberlain by among other things, non-consensually engaging in oral sex, digitally penetrating her while she was passed out, and putting her in the immediate apprehension of harm by standing above her and photographing her without her consent.

90.     As a direct and proximate cause of Neumann's harmful and offensive contact, Ms. Chamberlain was injured and suffered damages in an amount to be proven at trial.

91.     As set forth herein, Neumann was acting within the course and scope of his employment with SOM and GHF when he made his offensive contact, and threats of offensive contact, with Ms. Chamberlain. Neumann was on a company-sponsored business trip, performing an act he was authorized to perform; and his actions were motivated, at least in part, by a purpose to serve both SOM and GHF.

92.     Because Neumann was acting within the course and scope of his employment for SOM and GHF, SOM and GHF are vicariously liable for the damages caused by his tortious conduct.

### SECOND CLAIM FOR RELIEF
**Negligence**
**(Against All Defendants)**

93.     Ms. Chamberlain hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

1    94.    Neumann, SOM, and GHF owed a duty of reasonable care to Ms.

2    Chamberlain, namely, to treat her at all times as a reasonable person on under the

3    circumstances would.

4    95.    Neumann breached this duty of care to Ms. Chamberlain when he got her

5    intoxicated; then, per his own statements allowed her to be drugged (or drugged her

6    himself); then carried her back to his hotel room where he sexually assaulted her and

7    surreptitiously took photographs of her that he, upon information and belief, forwarded to

8    others.

9    96.    SOM and GHF breached their respective duties of care to Ms. Chamberlain

10   by negligently allowing Neumann to be in a continued position of power over her where

11   she would feel compelled to drink with him, go to a strip club with him, and be in a position

12   where he could sexually assault her.

13   97.    Any reasonable business in the these companies' position would have trained,

14   supervised, investigated, and ultimately disciplined an employee behaving like Neumann

15   long before he ever had an opportunity to assault Ms. Chamberlain, and it was their

16   cumulative negligence that allowed Neumann to be in a position to do what he did to her.

17   98.    As a direct and proximate result of these actions and failures, Ms.

18   Chamberlain was injured and suffered damages in an amount to be proven at trial.

19   99.    In addition to their direct liability, SOM and GHF are also vicariously liable

20   for Neumann's acts and omissions insofar as he was acting within the course and scope of

21   his employment.

22                    **THIRD CLAIM FOR RELIEF**
                     **Negligence Per Se Under Arizona Law**
23                        **(Against All Defendants)**

24   100.   Ms. Chamberlain hereby incorporates by reference the allegations contained

25   in the foregoing paragraphs as if they were fully set forth herein.

26

- 18 -

1      101.   A.R.S. § 13-1406(A) prohibits a person from "intentionally or knowingly

2    engaging in sexual intercourse or oral sexual contact with any person without the consent

3    of such person."

4      102.   A.R.S. § 13-1406(A) was enacted for the protection of the class of individuals

5    of which Ms. Chamberlain was a member, i.e. persons who do not consent to sexual

6    intercourse or oral sex.

7      103.   At the time of the events alleged herein, Neumann "intentionally and

8    knowingly" engaged in "oral sexual contact" with Ms. Chamberlain who did not, and was

9    not capable of, providing consent to such acts.

10     104.   Neumann violated A.R.S. § 13-1406(A).

11     105.   Ms. Chamberlain was injured as a direct and proximate cause of Defendant

12    Neumann's violation of A.R.S. § 13-1406(A).

13     106.   As a result of the foregoing, Ms. Chamberlain suffered damages in an amount

14    to be proven at trial.

15     107.   As set forth herein, Neumann was acting within the course and scope of his

16    employment with SOM and GHF when he made contact with Ms. Chamberlain,

17     108.   SOM and GHF are vicariously liable for Neumann's acts and omissions

18    insofar as he was acting within the course and scope of his employment.

19

20                     **FOURTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**

21                        **(Against All Defendants)**

22     109.   Ms. Chamberlain hereby incorporates by reference the allegations contained

23    in the foregoing paragraphs as if they were fully set forth herein.

24     110.   Neumann's above-described conduct was extreme and outrageous because an

25    average member of the community would regard the conduct as atrocious, intolerable in

26    civilized society, and beyond all possible bounds of decency.

1  111.  Neumann's above-described conduct was intentional insofar as he intended
2  to cause Ms. Chamberlain emotional distress.

3  112.  Neumann's conduct was reckless because he either was aware of, or
4  consciously disregarded the near certainty that his actions would cause Ms. Chamberlain
5  emotional distress.

6  113.  Neumann's above-described conduct did, in fact, cause Ms. Chamberlain to
7  suffer emotional distress.

8  114.  As a direct and proximate result of Neumann's actions, Ms. Chamberlain was
9  injured and suffered damages in an amount to be proven at trial.

10  115.  SOM and GHF are vicariously liable for Neumann's acts and omissions
11  insofar as he was acting within the course and scope of his employment.

12  **<u>FIFTH CLAIM FOR RELIEF</u>**
   **Invasion of Privacy**
13  **(Against All Defendants)**

14  116.  Ms. Chamberlain hereby incorporates by reference the allegations contained
15  in the foregoing paragraphs as if they were fully set forth herein.

16  117.  Neumann intentionally interfered with or invaded Ms. Chamberlains' privacy
17  by, upon information and belief, taking photographs of her naked or semi-naked body
18  without per authorization or consent.

19  118.  Neumann's invasion of Ms. Chamberlain's privacy would be highly offensive
20  to a reasonable person:  A reasonable person in the same or similar circumstances as Ms.
21  Chamberlain, learning that Neumann was taking photographs of her unconscious on a bed
22  in a state of undress, would feel seriously upset or embarrassed by the invasion.

23  119.  Neumann's invasion of Ms. Chamberlain's privacy caused serious emotional
24  injuries to her.

25  120.  As a direct and proximate result of Neumann's actions, Ms. Chamberlain was
26  injured and suffered damages in an amount to be proven at trial.

- 20 -

1    121.   SOM and GHF are vicariously liable for Neumann's acts and omissions
2 insofar as he was acting within the course and scope of his employment.

3                        **SIXTH CLAIM FOR RELIEF**
4                        **(Hostile Work Environment)**

5      122.   Plaintiff incorporates by reference all allegations contained in the foregoing
6 paragraphs as if they were fully set forth herein.

7      123.   While formally and functionally employed at SOM and GHF, Ms.
8 Chamberlain was subjected to a sexually discriminatory work environment where
9 Neumann, unimpeded by any other executive, regularly grabbed, groped, fondled,
10 propositioned, kissed, and made sexually explicit comments to other female employees
11 and to Ms. Chamberlain.

12     124.   Because of its ubiquity, SOM and GHF executives and managers knew or
13 should have known of Neumann's rampant sexual harassment and discrimination.

14     125.   In October 2018, Ms. Chamberlain communicated to Senior Vice President
15 Kevin Hoppe and CFO Kathleen De Volld (collectively, the "Executives") her concern
16 over Neumann's sexual assault and sexual harassment.  Although the Executives knew or
17 should have known of Neumann's rampant sexual harassment and discrimination before
18 October 2018, the Executives gained actual knowledge about Neumann's sexual
19 harassment at that time.

20     126.   In response, the Executives immediately began to retaliate against Ms.
21 Chamberlain by moving Neumann, the man who had sexually assaulted her, into her
22 office.

23     127.   Because SOM and GHF shared an owner, operated together, and shared
24 employees, GHF managers (collectively "Managers") also knew or should have known
25 of Neumann's sexual assault, harassment, and discrimination against Ms. Chamberlain,
26 and they knew or should have known of the Executives retaliation against her.

128.    The Executives' and Managers' pervasive and severe behavior – both in permitting a sexually discriminatory work environment to persist and in retaliating against Ms. Chamberlain unreasonably interfered with Ms. Chamberlain's workplace by creating an intimidating, hostile, and offensive working environment.

129.    The Executives' and Managers' actions caused Ms. Chamberlain anxiety and emotional pain that made the workplace intolerable for her.

130.    SOM and GHF failed to conduct a fair and thorough investigation into Ms. Chamberlain's allegations and failed to take adequate remedial measures or other action reasonably calculated to remedy what had clearly become a hostile work environment.

131.    The hostile work environment persisted until the time of Ms. Chamberlain's forced resignation in October 2018.

132.    Ms. Chamberlain timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

133.    Ms. Chamberlain received a "right to sue" letter (the "Letter") on or after December 4, 2018 and is filing this Complaint within 90 days of receipt of that Letter.

134.    By failing to address a known hostile work environment, SOM and GHF against Ms. Owens based upon her sex in violation of 42 U.S.C. § 2000e-2(a).

**SEVENTH CLAIM FOR RELIEF**

**(Retaliation)**

135.    Plaintiff incorporates by reference all allegations contained in the foregoing paragraphs as if they were fully set forth herein.

136.    Ms. Chamberlain engaged in a protected activity by reporting unlawful sexual assault and harassment to the Executives in October 2018.

137.    SOM took a negative employment action against Ms. Chamberlain by moving Neumann, the man who had sexually assaulted her, into her office, forcing her to resign.

138.  SOM took this negative employment action in retaliation for Ms. Chamberlain making an internal complaint of sexual assault, harassment and retaliation which is a protected activity under Title VII.

139.  By and through the foregoing acts and omissions, SOM retaliated against Ms. Chamberlain for opposing and reporting the sexually hostile work environment in violation of 42 U.S.C. § 2000e-3(a).

140.  Ms. Chamberlain timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

141.  Ms. Chamberlain received a "right to sue" letter (the "Letter") on or after December 4, 2018 and is filing this Complaint within 90 days of receipt of that Letter.

142.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brienna Chamberlain hereby requests that the Court enter judgment against the Defendants as follows:

A.  For special damages in an amount sufficient to compensate Ms. Chamberlain fully and fairly for the injuries she has sustained, including but not limited to her medical expenses and lost wages;

B.  For general, consequential, special, and compensatory damages, including but not limited to her pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life;

C.  For lost wages, including back pay and front pay, as permitted by federal law;

D.  For nominal damages as provided for by law;

E.  For prejudgment interest on all liquidated sums;

F.  For punitive damages in an amount sufficient to punish defendants and deter future reprehensible conduct;

G.  For attorneys' fees as provided for by law;

**Formatted:** Font: Not Bold, No underline

H.     For Ms. Chamberlain's costs and other expenses incurred in this action; and

I.     For such other and further relief as the Court deems just.

RESPECTFULLY SUBMITTED this 18th day of December, 2018.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona  85003

By: _____
Stephen D. Benedetto
Heather Hamel

*Attorneys for Plaintiff Brienna Chamberlain*

**Deleted:** 28th

**Deleted:** September

1   Kristy L. Peters; AZ Bar No. 024756
    kpeters@littler.com
2   Peter C. Prynkiewicz; AZ Bar No. 015256
    pprynkiewicz@littler.com
3   LITTLER MENDELSON, P.C.
    Camelback Esplanade
4   2425 East Camelback Road, Suite 900
    Phoenix, AZ  85016
5   Telephone:   602.474.3600
    Facsimile:   602.957.1801
6

7   Attorneys for Defendants

8

9                IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10                     IN AND FOR THE COUNTY OF MARICOPA

11

12  BRIENNA CHAMBERLAIN, a                Case No. CV2018-012269
    married woman,
13                                        **RESPONSE TO MOTION FOR
                Plaintiff,                LEAVE TO AMEND COMPLAINT**
14
    v.                                    (Assigned to Hon. Margaret Mahoney)
15
    JAMES NEUMANN, a married man;
16  SHOUT OUTDOOR MEDIA, LLC, a
    Missouri limited liability company;
17  and GLASS HALF FULL, LLC, an
    Illinois limited liability company;
18  JOHN AND JANE DOES I-X; ABC
    CORPORATIONS I-X; and BLACK
19  AND WHITE PARTNERSHIPS I-X,

20              Defendants.

21

22

23          Defendants, James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC

24  (collectively "Defendants"), hereby alert the Court that they do not oppose Plaintiff's Motion

25  to Amend Complaint. However, Defendants reserve all defenses to the claims set forth in the

26  proposed Amended Complaint.

27

28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

1    DATED this 8th day of January, 2019.

2

3                                    /s/ Kristy L. Peters
                                     _____
4                                    Kristy L. Peters
                                     Peter C. Prynkiewicz
5                                    LITTLER MENDELSON, P.C.

6                                    Attorneys for Defendants

7

8    ORIGINAL e-filed and COPY served via
     AZ Turbocourt this 8th day of January,
9    2019, to:

10   The Honorable Margaret Mahoney
     Maricopa County Superior Court Judge
11

12   COPY mailed and/or emailed this 8th day
     of January, 2019, to:

13   THE PEOPLE'S LAW FIRM, PLC

14   Stephen D. Benedetto
     Heather Hamel
15   645 North 4th Avenue, Suite A
     Phoenix, Arizona 85003
16   Telephone: (602) 456-1901
17   Facsimile: (602) 801-2834
     benedetto@the-plf.com
18   hamel@the-plf.com
     *Attorneys for Plaintiff Brienna Chamberlain*
19

20   /s/ Linda Bullis
     _____
21   FIRMWIDE:161710675.1 100592.1001

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-2-

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-012269                                        01/18/2019

                                             CLERK OF THE COURT
HONORABLE MARGARET R. MAHONEY                    S. Brown
                                                 Deputy


BRIENNA CHAMBERLAIN                          STEPHEN DOMINIC BENEDETTO

v.

JAMES NUEMANN, et al.                        KRISTY L PETERS


                                             JUDGE MAHONEY


                         MINUTE ENTRY

The Court has considered:

1. Defendants James Neumann, South Outdoor Media, LLC and Half Glass Full, LLC's (collectively, "Defendants") Motion to Strike Plaintiff's Complaint and to Seal All Stricken Portions ("Motion"), filed 10/12/18;
2. Plaintiff Brienna Chamberlain's ("Plaintiff") Response to Defendant's Motion to Strike and Seal All Stricken Portions, filed 10/31/18; and
3. Defendants James Neumann, South Outdoor Media, LLC and Half Glass Full, LLC's Reply in Support of Defendants' Motion to Strike Plaintiff's Complaint and to Seal All Stricken Portions, filed 11/19/18.

In the Motion, Defendants move to strike and/or seal approximately half the paragraphs of Plaintiff's Complaint filed 9/28/18 ("Complaint"), pursuant to Ariz. R. Civ. P., Rule 12(f).

The Complaint is 21 pages in length, includes 87 paragraphs of allegations, and asserts one count each of (1) assault and battery, (2) negligence, (3) negligence per se, (4) intentional infliction of emotional distress and (5) invasion of privacy. Defendants contend that 52 paragraphs of the Complaint contain "redundant, immaterial, impertinent or scandalous" matter in violation of Rule 12(f). Defendants also maintain that the Complaint's objectionable content is

CV 2018-012269                                                         01/18/2019

opinion, editorializing, improperly intended to incense and inflame the reader, and calculated to prejudice the reader against Defendants. Defendants further object that the Complaint violates the directive of Rule 8(a)(2) that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief."

Rule 12(f), **Motion to Strike,** provides: **"**The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." The parties both recognize that a Rule 12(f) motion is not favored and should not be granted unless it is clear that the stricken matter can have no possible relation to the subject matter of the litigation and the movant can show he is prejudiced by the retention of the material. *Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 395 (1963) (overruled in part on other grounds by .

Having considered Plaintiff's explanations as to the relevance and materiality of the challenged allegations, having no benefit of history with this dispute as the Complaint was so recently filed, and allowing for the fact that the very nature of the underlying events contain an element of scandal by definition, yet those are nevertheless the events at issue,

THE COURT FINDS, subject to the exception noted below, Defendants have not shown that the stricken matter can have no possible relation to the subject matter of the litigation and that Defendants are prejudiced by the retention of the material.

THE COURT FURTHER FINDS paragraphs 1 through 6 of the Complaint contain unnecessary and improper opinion speech, suitable for a closing argument perhaps but not a complaint, and redundant to other later allegations as highlighted by the fact that Plaintiff entitled these six paragraphs "Introduction."

**IT IS ORDERED** therefore granting Defendants' Motion to strike the first six paragraphs of the Complaint but otherwise denying the Motion.

Clerk of the Superior Court
*** Electronically Filed ***
S. Brown, Deputy
1/25/2019 8:00:00 AM
Filing ID 10090954

1

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)

2

Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A

3

Phoenix, Arizona 85003
Telephone: (602) 456-1901

4

Facsimile: (602) 801-2834
benedetto@the-plf.com

5

hamel@the-plf.com

6

*Firm email for docketing purposes:*
admin@the-plf.com

7

8

*Attorneys for Plaintiff Brienna Chamberlain*

9

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10

IN AND FOR THE COUNTY OF MARICOPA

11

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No. CV2018-012269 |
| Plaintiff, | **ORDER** |
| v. | |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X; | |
| Defendants. | |

12

13

14

15

16

17

18

19

20

21

HAVING CONSIDERED Plaintiff's Motion for Leave to Amend Complaint,

22

which motion Defendants do not oppose, and good cause appearing,

23

//

24

//

25

26

1         IT IS HEREBY ORDERED granting Plaintiff's unopposed Motion for Leave to

2   Amend Complaint.

3

4   DATE _____

5

6                                         _____
                                          HONORABLE MARGARET R. MAHONEY
7                                         MARICOPA COUNTY SUPERIOR COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Filing ID: 10090954   Case Number: CV2018-012269
Original Filing ID: 10041112

**Granted with Modifications**



/S/ Margaret Mahoney Date: 1/24/2019

Judicial Officer of Superior Court

**ENDORSEMENT PAGE**

CASE NUMBER: CV2018-012269

SIGNATURE DATE: 1/24/2019

E-FILING ID #: 10090954

FILED DATE: 1/25/2019 8:00:00 AM

KRISTY L PETERS

STEPHEN DOMINIC BENEDETTO

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:   602.474.3600
   Facsimile:   602.957.1801
6
   Attorneys for Defendants
7

8              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9                  IN AND FOR THE COUNTY OF MARICOPA

10

11  BRIENNA CHAMBERLAIN, a              Case No. CV2018-012269
    married woman,
12                                      **NOTICE OF FILING EXHIBIT A**
              Plaintiff,                **TO NOTICE TO ADVERSE**
13                                      **PARTIES AND NOTICE TO**
    v.                                  **STATE COURT**
14
    JAMES NUEMANN, a married man;       (Assigned to Hon. Margaret Mahoney)
15  SHOUT OUTDOOR MEDIA, LLC, a
    Missouri limited liability company;
16  and GLASS HALF FULL, LLC, an
    Illinois limited liability company;
17  JOHN AND JANE DOES I-X; ABC
    CORPORATIONS I-X; and BLACK
18  AND WHITE PARTNERSHIPS I-X,

19            Defendants.

20

21        Defendants hereby file the attached Notice of Removal of Civil Action as Exhibit A to

22  their Notice to Adverse Parties and Notice to Maricopa County Superior Court Clerk of the

23  State of Arizona.

24        DATED this 19th day of February, 2019.

25
                                   s/ Kristy L. Peters
26                                 Kristy L. Peters
                                   Peter C. Prynkiewicz
27                                 LITTLER MENDELSON, P.C.
                                   Attorneys for Defendants
28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1

2

ORIGINAL e-filed and COPY served via
AZ Turbocourt this 19th day of February,
2019, to:

3

4

The Honorable Margaret Mahoney
Maricopa County Superior Court Judge

5

COPY mailed and/or emailed this 19th day
of February, 2019, to:

6

7

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto

8

Heather Hamel
645 North 4th Avenue, Suite A

9

Phoenix, Arizona 85003
Telephone: (602) 456-1901

10

Facsimile: (602) 801-2834

11

benedetto@the-plf.com
hamel@the-plf.com

12

*Attorneys for Plaintiff Brienna Chamberlain*

13

14

*s/ Linda Bullis*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-2-

# EXHIBIT A

1   Kristy L. Peters; AZ Bar No. 024756
    kpeters@littler.com
2   Peter C. Prynkiewicz; AZ Bar No. 015256
    pprynkiewicz@littler.com
3   LITTLER MENDELSON, P.C.
    Camelback Esplanade
4   2425 East Camelback Road, Suite 900
    Phoenix, AZ 85016
5   Telephone:   602.474.3600
    Facsimile:   602.957.1801
6

7   Attorneys for Defendants

8

9             IN THE UNITED STATES DISTRICT COURT

10               FOR THE DISTRICT OF ARIZONA

11

| | |
|---|---|
| Brienna Chamberlain, a married woman, | Case No. |
|       Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION** **(Federal Question)** |
| v. | |
| James Neumann, a married man; Shout Outdoor Media, LLC, a Missouri limited liability company; and Glass Half Full, LLC, an Illinois limited liability company; John and Jane Does I-X; ABC Corporations I-X; and Black and White Partnerships I-X, | (Maricopa County Superior Court No. CV2018-012269) |
|       Defendants. | |

21 **TO:   CLERK OF THE UNITED STATES DISTRICT COURT**
22        **FOR THE DISTRICT OF ARIZONA**

23       Defendants James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC

24 ("Defendants" or "Shout Outdoor"), hereby remove the above-entitled action from the

25 Maricopa County Superior Court, State of Arizona, to the United States District Court for the

26 District of Arizona pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and Local Rule 3.6.

27 Defendants respectfully submit the following statement of grounds for removal on the basis

28 of this Court's federal question jurisdiction.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1.     Plaintiff filed the action *Brienna Chamberlain v. James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC*, et al., in the Maricopa County Superior Court, State of Arizona, *Case No. CV2018-012269* (the "Complaint" filed in the "State Court Action") on September 28, 2018. A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

2.     On October 17, 2018, Shout Outdoor and Glass Half Full were served with the Complaint. The original Complaint contained the following claims: (1) assault and battery; (2) negligence; (3) negligence per se; (4) intentional infliction of emotional distress; and (5) invasion of privacy. Accordingly, there were no allegations of violations of federal law in the original Complaint.

3.     On December 20, 2018, Plaintiff filed a motion to amend the Complaint. The proposed First Amended Complaint set forth allegations of hostile work environment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). On January 25, 2019, the Superior Court granted Plaintiff's motion to amend the Complaint. On January 30, 2019, Plaintiff filed the First Amended Complaint. The First Amended Complaint was the first time Plaintiff set forth claims of violation of federal law. A true and correct copy of the First Amended Complaint is attached as **Exhibit 2**. A true and correct copy of all filings received and filed by the Plaintiff and Defendants in the State Court Action is attached hereto as **Exhibit 3.**

4.     This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has alleged a federal question. Specifically, Plaintiff's Amended Complaint purports to state causes of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). Thus, the Amended Complaint itself, although filed in Arizona state court, invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331. "'A case arise[s] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677,

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

689–90 (2006)) (internal citation omitted).  Accordingly, this matter is removable under 28 U.S.C. § 1441(a).

5.     The Amended Complaint also includes state law claims that are based on the same operative facts as Plaintiff's federal claim. Specifically, all claims in the Amended Complaint stem from a trip to Las Vegas between Plaintiff and Defendant Neumann. Therefore, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and those claims properly are removable under 28 U.S.C. § 1441(c).

6.     Notice of this removal is effected properly and timely pursuant to 28 U.S.C. § 1446(b)(1) as it is filed within 30 days after Defendants were served with the Amended Complaint in the Action.

7.     Based on the foregoing, this Action is properly removed to this Court.

8.     Defendants have given written notice of this removal to all adverse parties, in accordance with 28 U.S.C. § 1446(d).  A copy of the Notice to Adverse Party of Removal of Civil Action in the Maricopa County Superior Court, State of Arizona, is attached as **Exhibit 4**.

9.     Defendants filed the Notice to State Court of Removal of Civil Action in the Maricopa County Superior Court, State of Arizona and served Plaintiff with the Notice, in accordance with 28 U.S.C. § 1446(d).  A copy of the Notice to State Court of Removal of Civil Action is attached as **Exhibit 5**.

DATED this 19th day of February, 2019.


*s/ Kristy L Peters*
_____
Kristy L. Peters
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.

Attorneys for Defendants

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-3-

1    I hereby certify that I electronically
transmitted the attached document to the
2    Clerk's Office using the CM/ECF System
for filing and transmittal of a Notice of
3    Electronic Filing to the following CM/ECF
registrants, and mailed a copy of same to
4    the following if non-registrants, this 19th
day of February, 2019, to:

5

6    THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto

7    Heather Hamel
645 North 4th Avenue, Suite A

8    Phoenix, Arizona 85003
Telephone: (602) 456-1901

9    Facsimile: (602) 801-2834

10    benedetto@the-plf.com
hamel@the-plf.com

11    *Attorneys for Plaintiff Brienna Chamberlain*

12

13    *s/ Linda Bullis*

14    FIRMWIDE:161724429.1 100592.1001

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-4-

# EXHIBIT 4

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:   602.474.3600
   Facsimile:   602.957.1801
6
7  Attorneys for Defendants
8
9         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
10              IN AND FOR THE COUNTY OF MARICOPA
11

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No. CV2018-012269 |
| Plaintiff, | NOTICE TO ADVERSE PARTIES OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT |
| v. | (Assigned to Hon. Margaret Mahoney) |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X, | |
| Defendants. | |

**TO:    PLAINTIFF BRIENNA CHAMBERLAIN:**

PLEASE TAKE NOTICE that on February 19, 2019, Defendants filed a Notice of Removal of Civil Action under 28 U.S.C. §§ 1331 and 1441 (federal question) with the Clerk of the United States District Court for the District of Arizona.  A copy of the Notice of Removal is attached as **Exhibit A**.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

DATED this 19th day of February, 2019.

*s/ Kristy L. Peters*
Kristy L. Peters
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.

Attorneys for Defendants

ORIGINAL e-filed and COPY served via AZ Turbocourt this 19th day of February, 2019, to:

The Honorable Margaret Mahoney
Maricopa County Superior Court Judge

COPY mailed and/or emailed this 19th day of February, 2019, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

*s/ Linda Bullis*

FIRMWIDE:162499500.1 100592.1001

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:  602.474.3600
   Facsimile:  602.957.1801
6
7  Attorneys for Defendants

8                IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9                    IN AND FOR THE COUNTY OF MARICOPA

10

11 | BRIENNA CHAMBERLAIN, a         | Case No. CV2018-012269
   | married woman,                 |
12 |                                | **NOTICE OF FILING EXHIBIT A**
   |              Plaintiff,         | **TO NOTICE TO ADVERSE**
13 |                                | **PARTIES AND NOTICE TO**
   | v.                             | **STATE COURT**
14 |                                |
   | JAMES NUEMANN, a married man;  | (Assigned to Hon. Margaret Mahoney)
15 | SHOUT OUTDOOR MEDIA, LLC, a    |
   | Missouri limited liability company; |
16 | and GLASS HALF FULL, LLC, an   |
   | Illinois limited liability company; |
17 | JOHN AND JANE DOES I-X; ABC    |
   | CORPORATIONS I-X; and BLACK    |
18 | AND WHITE PARTNERSHIPS I-X,    |
19 |              Defendants.        |

20

21         Defendants hereby file the attached Notice of Removal of Civil Action as Exhibit A to

22  their Notice to Adverse Parties and Notice to Maricopa County Superior Court Clerk of the

23  State of Arizona.

24         DATED this 19th day of February, 2019.

25

26                                    *s/ Kristy L. Peters*
                                      Kristy L. Peters
27                                    Peter C. Prynkiewicz
                                      LITTLER MENDELSON, P.C.
28                                    Attorneys for Defendants

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

ORIGINAL e-filed and COPY served via
AZ Turbocourt this 19th day of February,
2019, to:

The Honorable Margaret Mahoney
Maricopa County Superior Court Judge

COPY mailed and/or emailed this 19th day
of February, 2019, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

*s/ Linda Bullis*

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

# EXHIBIT A

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:   602.474.3600
   Facsimile:   602.957.1801
6

7  Attorneys for Defendants

8

9              IN THE UNITED STATES DISTRICT COURT

10                FOR THE DISTRICT OF ARIZONA

11

12  Brienna Chamberlain, a married woman,    | Case No.

13              Plaintiff,                    | **NOTICE OF REMOVAL OF**
                                              | **CIVIL ACTION**
14  v.                                        | **(Federal Question)**

15  James Neumann, a married man; Shout       | (Maricopa County Superior Court No.
    Outdoor Media, LLC, a Missouri limited    | CV2018-012269)
16  liability company; and Glass Half Full,
    LLC, an Illinois limited liability company;
17  John and Jane Does I-X; ABC Corporations
    I-X; and Black and White Partnerships I-X,
18

19              Defendants.

20

21  **TO:   CLERK OF THE UNITED STATES DISTRICT COURT**
22       **FOR THE DISTRICT OF ARIZONA**

23          Defendants James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC

24  ("Defendants" or "Shout Outdoor"), hereby remove the above-entitled action from the

25  Maricopa County Superior Court, State of Arizona, to the United States District Court for the

26  District of Arizona pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and Local Rule 3.6.

27  Defendants respectfully submit the following statement of grounds for removal on the basis

28  of this Court's federal question jurisdiction.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1.     Plaintiff filed the action *Brienna Chamberlain v. James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC, et al.,* in the Maricopa County Superior Court, State of Arizona, *Case No. CV2018-012269* (the "Complaint" filed in the "State Court Action") on September 28, 2018.  A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

2.     On October 17, 2018, Shout Outdoor and Glass Half Full were served with the Complaint. The original Complaint contained the following claims: (1) assault and battery; (2) negligence; (3) negligence per se; (4) intentional infliction of emotional distress; and (5) invasion of privacy. Accordingly, there were no allegations of violations of federal law in the original Complaint.

3.     On December 20, 2018, Plaintiff filed a motion to amend the Complaint. The proposed First Amended Complaint set forth allegations of hostile work environment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). On January 25, 2019, the Superior Court granted Plaintiff's motion to amend the Complaint. On January 30, 2019, Plaintiff filed the First Amended Complaint. The First Amended Complaint was the first time Plaintiff set forth claims of violation of federal law. A true and correct copy of the First Amended Complaint is attached as **Exhibit 2**. A true and correct copy of all filings received and filed by the Plaintiff and Defendants in the State Court Action is attached hereto as **Exhibit 3.**

4.     This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has alleged a federal question.  Specifically, Plaintiff's Amended Complaint purports to state causes of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e).  Thus, the Amended Complaint itself, although filed in Arizona state court, invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.  "'A case arise[s] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677,

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

689–90 (2006)) (internal citation omitted). Accordingly, this matter is removable under 28 U.S.C. § 1441(a).

5.     The Amended Complaint also includes state law claims that are based on the same operative facts as Plaintiff's federal claim. Specifically, all claims in the Amended Complaint stem from a trip to Las Vegas between Plaintiff and Defendant Neumann. Therefore, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and those claims properly are removable under 28 U.S.C. § 1441(c).

6.     Notice of this removal is effected properly and timely pursuant to 28 U.S.C. § 1446(b)(1) as it is filed within 30 days after Defendants were served with the Amended Complaint in the Action.

7.     Based on the foregoing, this Action is properly removed to this Court.

8.     Defendants have given written notice of this removal to all adverse parties, in accordance with 28 U.S.C. § 1446(d). A copy of the Notice to Adverse Party of Removal of Civil Action in the Maricopa County Superior Court, State of Arizona, is attached as **Exhibit 4**.

9.     Defendants filed the Notice to State Court of Removal of Civil Action in the Maricopa County Superior Court, State of Arizona and served Plaintiff with the Notice, in accordance with 28 U.S.C. § 1446(d). A copy of the Notice to State Court of Removal of Civil Action is attached as **Exhibit 5**.

DATED this 19th day of February, 2019.


*s/ Kristy L Peters*
Kristy L. Peters
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.

Attorneys for Defendants

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-3-

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 19th day of February, 2019, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

*s/ Linda Bullis*

FIRMWIDE:161724429.1 100592.1001

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

# EXHIBIT 5

1  Kristy L. Peters; AZ Bar No. 024756
   kpeters@littler.com
2  Peter C. Prynkiewicz; AZ Bar No. 015256
   pprynkiewicz@littler.com
3  LITTLER MENDELSON, P.C.
   Camelback Esplanade
4  2425 East Camelback Road, Suite 900
   Phoenix, AZ 85016
5  Telephone:   602.474.3600
   Facsimile:   602.957.1801
6
7  Attorneys for Defendants

8              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
9
10                IN AND FOR THE COUNTY OF MARICOPA

11 BRIENNA CHAMBERLAIN, a            Case No. CV2018-012269
   married woman,
12                                   **NOTICE TO STATE COURT OF
                                     REMOVAL OF CIVIL ACTION TO
13            Plaintiff,             FEDERAL COURT**

14 v.                               (Assigned to Hon. Margaret Mahoney)

15 JAMES NUEMANN, a married man;
   SHOUT OUTDOOR MEDIA, LLC, a
16 Missouri limited liability company;
   and GLASS HALF FULL, LLC, an
17 Illinois limited liability company;
   JOHN AND JANE DOES I-X; ABC
18 CORPORATIONS I-X; and BLACK
   AND WHITE PARTNERSHIPS I-X,
19
20            Defendants.

21
22 **TO:    MARICOPA COUNTY SUPERIOR COURT CLERK OF THE STATE OF
           ARIZONA**
23

24         PLEASE TAKE NOTICE that on February 19, 2019, Defendants filed a Notice of

25 Removal of Civil Action under 28 U.S.C. §§ 1331 and 1441 (federal question) with the Clerk

26 of the United States District Court for the District of Arizona.  A copy of the Notice of

27 Removal is attached as **Exhibit A**.

28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1    Please also take notice that the filing of the Notice of Removal with the Clerk of this

2    Court effects the removal of the action in accordance with 28 U.S.C. § 1446(d).

3         DATED this 19th day of February, 2019.

4

5                                    *s/ Kristy L. Peters*
                                     Kristy L. Peters
6                                    Peter C. Prynkiewicz
                                     LITTLER MENDELSON, P.C.
7
                                     Attorneys for Defendants
8

9

10   ORIGINAL e-filed and COPY served via
     AZ Turbocourt this 19th day of February,
11   2019, to:

12   The Honorable Margaret Mahoney
     Maricopa County Superior Court Judge
13
     COPY mailed and/or emailed this 19th day
14   of February, 2019, to:

15   THE PEOPLE'S LAW FIRM, PLC
16   Stephen D. Benedetto
     Heather Hamel
17   645 North 4th Avenue, Suite A
18   Phoenix, Arizona 85003
     Telephone: (602) 456-1901
19   Facsimile: (602) 801-2834
     benedetto@the-plf.com
20   hamel@the-plf.com
     *Attorneys for Plaintiff Brienna Chamberlain*
21

22   *s/ Linda Bullis*
23   FIRMWIDE:162499403.1 100592.1001

24

25

26

27

28

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-2-

Kristy L. Peters; AZ Bar No. 024756
kpeters@littler.com
Peter C. Prynkiewicz; AZ Bar No. 015256
pprynkiewicz@littler.com
LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.957.1801

Attorneys for Defendants

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BRIENNA CHAMBERLAIN, a married woman, | Case No. CV2018-012269 |
| Plaintiff, | **NOTICE OF FILING EXHIBIT A TO NOTICE TO ADVERSE PARTIES AND NOTICE TO STATE COURT** |
| v. | (Assigned to Hon. Margaret Mahoney) |
| JAMES NUEMANN, a married man; SHOUT OUTDOOR MEDIA, LLC, a Missouri limited liability company; and GLASS HALF FULL, LLC, an Illinois limited liability company; JOHN AND JANE DOES I-X; ABC CORPORATIONS I-X; and BLACK AND WHITE PARTNERSHIPS I-X, | |
| Defendants. | |

Defendants hereby file the attached Notice of Removal of Civil Action as Exhibit A to their Notice to Adverse Parties and Notice to Maricopa County Superior Court Clerk of the State of Arizona.

DATED this 19th day of February, 2019.

*s/ Kristy L. Peters*
Kristy L. Peters
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.
Attorneys for Defendants

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1

2    ORIGINAL e-filed and COPY served via
     AZ Turbocourt this 19th day of February,
3    2019, to:

4    The Honorable Margaret Mahoney
     Maricopa County Superior Court Judge

5    COPY mailed and/or emailed this 19th day
     of February, 2019, to:
6

7    THE PEOPLE'S LAW FIRM, PLC
     Stephen D. Benedetto
8    Heather Hamel
     645 North 4th Avenue, Suite A
9    Phoenix, Arizona 85003
     Telephone: (602) 456-1901
10   Facsimile: (602) 801-2834
11   benedetto@the-plf.com
     hamel@the-plf.com
12   *Attorneys for Plaintiff Brienna Chamberlain*

13
     *s/ Linda Bullis*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-2-

# EXHIBIT A

1    Kristy L. Peters; AZ Bar No. 024756
     kpeters@littler.com
2    Peter C. Prynkiewicz; AZ Bar No. 015256
     pprynkiewicz@littler.com
3    LITTLER MENDELSON, P.C.
     Camelback Esplanade
4    2425 East Camelback Road, Suite 900
     Phoenix, AZ 85016
5    Telephone:   602.474.3600
     Facsimile:    602.957.1801
6

7    Attorneys for Defendants

8

9            IN THE UNITED STATES DISTRICT COURT

10                FOR THE DISTRICT OF ARIZONA

11

| | |
|---|---|
| Brienna Chamberlain, a married woman, | Case No. |
| Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION** (Federal Question) |
| v. | |
| James Neumann, a married man; Shout Outdoor Media, LLC, a Missouri limited liability company; and Glass Half Full, LLC, an Illinois limited liability company; John and Jane Does I-X; ABC Corporations I-X; and Black and White Partnerships I-X, | (Maricopa County Superior Court No. CV2018-012269) |
| Defendants. | |

20

21   **TO:   CLERK OF THE UNITED STATES DISTRICT COURT**
22          **FOR THE DISTRICT OF ARIZONA**

23        Defendants James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC

24 ("Defendants" or "Shout Outdoor"), hereby remove the above-entitled action from the

25 Maricopa County Superior Court, State of Arizona, to the United States District Court for the

26 District of Arizona pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and Local Rule 3.6.

27 Defendants respectfully submit the following statement of grounds for removal on the basis

28 of this Court's federal question jurisdiction.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

1. Plaintiff filed the action *Brienna Chamberlain v. James Neumann, Shout Outdoor Media, LLC, and Glass Half Full, LLC*, et al., in the Maricopa County Superior Court, State of Arizona, *Case No. CV2018-012269* (the "Complaint" filed in the "State Court Action") on September 28, 2018. A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

2. On October 17, 2018, Shout Outdoor and Glass Half Full were served with the Complaint. The original Complaint contained the following claims: (1) assault and battery; (2) negligence; (3) negligence per se; (4) intentional infliction of emotional distress; and (5) invasion of privacy. Accordingly, there were no allegations of violations of federal law in the original Complaint.

3. On December 20, 2018, Plaintiff filed a motion to amend the Complaint. The proposed First Amended Complaint set forth allegations of hostile work environment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). On January 25, 2019, the Superior Court granted Plaintiff's motion to amend the Complaint. On January 30, 2019, Plaintiff filed the First Amended Complaint. The First Amended Complaint was the first time Plaintiff set forth claims of violation of federal law. A true and correct copy of the First Amended Complaint is attached as **Exhibit 2**. A true and correct copy of all filings received and filed by the Plaintiff and Defendants in the State Court Action is attached hereto as **Exhibit 3.**

4. This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has alleged a federal question. Specifically, Plaintiff's Amended Complaint purports to state causes of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e). Thus, the Amended Complaint itself, although filed in Arizona state court, invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331. "'A case arise[s] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677,

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

689–90 (2006)) (internal citation omitted).  Accordingly, this matter is removable under 28 U.S.C. § 1441(a).

5.     The Amended Complaint also includes state law claims that are based on the same operative facts as Plaintiff's federal claim. Specifically, all claims in the Amended Complaint stem from a trip to Las Vegas between Plaintiff and Defendant Neumann. Therefore, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and those claims properly are removable under 28 U.S.C. § 1441(c).

6.     Notice of this removal is effected properly and timely pursuant to 28 U.S.C. § 1446(b)(1) as it is filed within 30 days after Defendants were served with the Amended Complaint in the Action.

7.     Based on the foregoing, this Action is properly removed to this Court.

8.     Defendants have given written notice of this removal to all adverse parties, in accordance with 28 U.S.C. § 1446(d).  A copy of the Notice to Adverse Party of Removal of Civil Action in the Maricopa County Superior Court, State of Arizona, is attached as **Exhibit 4**.

9.     Defendants filed the Notice to State Court of Removal of Civil Action in the Maricopa County Superior Court, State of Arizona and served Plaintiff with the Notice, in accordance with 28 U.S.C. § 1446(d).  A copy of the Notice to State Court of Removal of Civil Action is attached as **Exhibit 5**.

DATED this 19th day of February, 2019.


*s/ Kristy L Peters*
Kristy L. Peters
Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.

Attorneys for Defendants

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-3-

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 19th day of February, 2019, to:

THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com
*Attorneys for Plaintiff Brienna Chamberlain*

*s/ Linda Bullis*

FIRMWIDE:161724429.1 100592.1001

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600